NATIONAL UNION FIRE INSURANCE COMPANY, Plaintiff-Appellee, v. GLENVIEW PARK DISTRICT, Defendant-Appellant (National Surety Corporation, Plaintiff; Patricia A. Claussen, Indiv. and as Guardian of the Estate of Frederick E. Claussen, Defendant).—NATIONAL SURETY CORPORATION, Plaintiff-Appellant, v. GLENVIEW PARK DISTRICT, Defendant-Appellee (National Union Fire Insurance Company, Plaintiff; Patricia A. Claussen, Indiv. and as Guardian of the Estate of Frederick E. Claussen, Defendant).

First District (2nd Division)   Nos. 1—90—3505, 1—90—3509 cons.

Opinion filed June 2, 1992.

Ancel, Glink, Diamond & Cope, P.C., of Chicago (Thomas G. DiCianni and Jennifer A. Pritz, of counsel), for appellant.

Pretzel & Stouffer, Chartered, of Chicago (Robert Marc Chemers and Andrew G. Witik, of counsel), for appellee.

JUSTICE HARTMAN delivered the opinion of the court:

This consolidated appeal emanates from the same civil suit. In No. 1—90—3505, Glenview Park District (Glenview) appeals the grant of summary judgment in favor of National Union Fire Insurance Company (National Union) and the denial of its cross-motion for summary judgment. In No. 1—90—3509, National Surety Corporation (National Surety) appeals the denial of its motion for summary judgment against Glenview and the granting of summary judgment in favor of Glenview on Glenview's cross-motion. The issues presented on appeal are whether (1) the provision in National Union's primary policy excluding coverage for negligence of an additional insured was void and unenforceable; (2) the omission of the negligence exclusion in the certificate of insurance precluded its application; (3) the negligence exclusion denied coverage to the additional insured for a violation of the Illinois Structural Work Act (Act) (Ill. Rev. Stat. 1987, ch. 48, par. 60 *et seq.*); (4) Glenview was an "insured" under National Surety's excess and umbrella liability policy; and (5) National Surety's policy "dropped down" to provide coverage to Glenview in the absence of primary coverage.

On March 11, 1988, National Decorating Service, Inc. (National Decorating), entered into a written contract with Glenview to refurbish an ice rink. The contract required that National Decorating maintain a policy of public liability insurance with limits of not less than $1 million per person and per occurrence and which specifically named Glenview as an additional insured.

National Union issued an insurance policy to National Decorating as the named insured, which provided for comprehensive general liability insurance on a primary basis with effective dates from August 31, 1987, to August 31, 1988. The limits of liability were $1 million per occurrence and in the aggregate.

National Surety also issued an insurance policy to National Decorating as the named insured which purportedly provided excess and umbrella liability coverage for the same period. National Surety's policy specified a limit of $2 million per occurrence and in the aggregate.

On May 24, 1988, Frederick Claussen, an employee of National Decorating, fell from the scaffold upon which he was working and sustained injuries. Patricia Claussen (Claussen) was appointed as his legal guardian and filed suit in the circuit court of Cook County against Glenview seeking recovery for his injuries (Claussen action). The three-count complaint alleged a violation of the Act and negligence.

On April 26, 1989, National Union filed a declaratory judgment action against Glenview and Claussen seeking a determination that it was not obligated to defend or indemnify Glenview under its primary policy. National Union alleged that the terms of the primary policy excluded coverage for damages arising from the negligence of Glenview, an "additional insured." Subsequently, on motion, the complaint was amended to include National Surety as an additional plaintiff. National Surety alleged that it also had no duty to indemnify because Glenview was not an "insured" as defined by its excess and umbrella liability policy.

On July 19, 1990, National Surety and National Union filed a joint motion for summary judgment and supporting memoranda. On July 24, 1990, Glenview filed a motion to stay the declaratory judgment proceedings pending a decision in the Claussen action and later filed a cross-motion for summary judgment against National Union and National Surety.

The circuit court granted National Union's motion for summary judgment, finding that the primary policy did not provide Glenview, as the additional insured, coverage for any damage. Further, the court found that National Surety's policy "dropped down" to provide coverage to Glenview and, therefore, National Surety's motion for summary judgment was denied. Glenview and National Surety each appeal the denial of their respective motions for summary judgment and the grant of summary judgment to their opponents.

I

In case No. 1—90—3505, Glenview identifies circuit court error in granting summary judgment to National Union because the policy's negligence exclusion was void and unenforceable. The provision at issue reads:

> "The Persons Insured provision of this policy is amended to include as an Insured any Persons or organization whom the Named Insured has agreed by contract, either oral or written, prior to loss, to include as an Insured with respect to operations performed by or on behalf of the Named Insured. Such

Insureds included by contract shall hereinafter be referred to as Additional Insureds, and *the insurance afforded in paragraph A above shall not apply to damages arising out of the negligence of the Additional Insured(s)* \*\*\*." (Emphasis added.)

In interpreting an insurance policy, the court's primary concern is to effectuate the intent of the parties as expressed by the contract. (*State Farm Fire & Casualty Co. v. Moore* (1981), 103 Ill. App. 3d 250, 255, 430 N.E.2d 641.) An insured's potential liability, for purposes of defense and indemnity coverage, is measured by the allegations of the underlying complaint; a liability insurer is obligated to defend an action brought against a putative insured if the complaint sets forth allegations that bring the claim within or potentially within the coverage of the policy. (*Maryland Casualty Co. v. Chicago & North Western Transportation Co.* (1984), 126 Ill. App. 3d 150, 152-53, 466 N.E.2d 1091 (*Maryland Casualty*); *Casualty Insurance Co. v. Northbrook Property & Casualty Insurance Co.* (1986), 150 Ill. App. 3d 472, 474, 501 N.E.2d 812 (*Casualty Insurance*).) When attempting to limit liability, the insurer must show that the claim falls within the exclusion; exclusionary provisions, therefore, are applied only if their terms are clear, definite, and explicit. *Maryland Casualty*, 126 Ill. App. 3d at 153; *Moore*, 103 Ill. App. 3d at 255-56.

Although the negligence exclusion refers to "paragraph A above," there is no designated "paragraph A" within the relevant endorsement or anywhere else in the policy. In construing the policy as a whole, however, the faulty designation is not fatal to the provision's effect, but logically, albeit awkwardly, refers to the immediately preceding paragraph.

Glenview urges this court to follow the reasoning and holding of *Casualty Insurance*. There, a subcontractor in a construction project obtained a general liability policy from Casualty Insurance which named the general contractor as an additional insured. The subcontractor's employee, injured at the jobsite, brought suit against the general contractor and others, alleging violations of the Act. The policy provided that the general contractor was an additional insured "but only with respect to liability arising out of operations performed for the additional insured by the named insured." (*Casualty Insurance*, 150 Ill. App. 3d at 474.) This court held that the language employed in the policy required Casualty Insurance to defend and indemnify the general contractor, since there was no specific reference in the endorsement necessitating the fault of the subcontractor, which Casualty Insurance could have done easily had it so intended. *Casualty Insurance*, 150 Ill. App. 3d at 476.

More analogous is *Consolidation Coal Co. v. Liberty Mutual Insurance Co.* (W.D. Pa. 1976), 406 F. Supp. 1292 (*Consolidation Coal*), which was distinguished in *Casualty Insurance*. In that case, the additional insured endorsement provided that Consolidation Coal was an additional insured, "but only with respect to acts or omissions of the named insured in connection with the named insured's operations at the applicable location." (*Consolidation Coal*, 406 F. Supp. at 1296.) Consolidation Coal was held to be an additional insured under the policy only when the negligent acts or omissions of the named insured directly caused Consolidation Coal's loss. *Consolidation Coal*, 406 F. Supp. at 1299.

■ Similarly, the endorsement in this case specifically limited Glenview's coverage to those situations in which the negligent acts or omissions of National Decorating had been established. The provision did not render the policy meaningless as to Glenview, but merely qualified the circumstances of its application. (See, *e.g., Harbor Insurance Co. v. Lewis* (E.D. Pa. 1983), 562 F. Supp. 800, 802-06; *First Insurance Co. v. State* (1983), 66 Haw. 413, 423-25, 665 P.2d 648, 655-56.) The language of the negligence exclusion is susceptible to a single reasonable interpretation and is not ambiguous, as Glenview argues. Contract terms are not ambiguous simply because parties do not agree on their meaning. (*Hanover Insurance Co. v. Showalter* (1990), 204 Ill. App. 3d 263, 266, 561 N.E.2d 1230.) When the language of an insurance policy is clear and unambiguous, it will be applied as written. (*International Minerals & Chemical Corp. v. Liberty Mutual Insurance Co.* (1988), 168 Ill. App. 3d 361, 371, 522 N.E.2d 758.) Further, the disputed provision does not violate public policy, and Glenview offers no authority to support its allegation to that effect. The National Union negligence exclusion is neither void nor unenforceable.

Summary judgment is proper when no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. Construction of an insurance policy is a matter of law to be determined by the court. (*Hartford Insurance Co. v. Jackson* (1990), 206 Ill. App. 3d 465, 469, 564 N.E.2d 906; *Maryland Casualty*, 126 Ill. App. 3d at 155.) The circuit court did not err in granting summary judgment to National Union on this issue.

II

Glenview next argues that its coverage as an additional insured derived not from the policy, but from the certificate of insurance. Be-

cause the certificate did not contain the negligence exclusion, Glenview maintains, that exclusion did not apply to it.

This issue was addressed recently in *Pekin Insurance Co. v. American Country Insurance Co.* (1991), 213 Ill. App. 3d 543, 572 N.E.2d 1112. A certificate of insurance issued to the general contractor by the subcontractor's insurer identified the subcontractor and general contractor as named and additional insured, respectively, and listed the effective policy numbers and dates of coverage. The certificate also contained the following statements, which are identical to the language in the certificate before us:

" "THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW.

\* \* \*

THIS IS TO CERTIFY THAT POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL OF THE TERMS, EXCLUSIONS, AND CONDITIONS OF SUCH POLICIES.' " (*Pekin Insurance Co.*, 213 Ill. App. 3d at 544.)

The policy itself contained an exclusion for any damage or injury arising out of roofing work.

At issue in that appeal was whether an ambiguity or conflict existed between the certificate and the policy, where the policy contained the aforementioned exclusion and the certificate did not. Because the certificate clearly indicated that it was not part of the policy and conveyed no rights to the policyholder, the general contractor was obligated to consult the policy in determining the extent of coverage and the existence of any exclusions. The court distinguished *International Amphitheatre Co. v. Vanguard Underwriters Insurance Co.* (1988), 177 Ill. App. 3d 555, 566-70, 532 N.E.2d 493, and *J.M. Corbett Co. v. Insurance Co. of North America* (1976), 43 Ill. App. 3d 624, 625-27, 357 N.E.2d 125, in which the certificates contained no such limiting language. Further, the certificate and the policy in those cases each contained different exclusions which created an ambiguity

in the agreement between the parties. *Pekin Insurance Co.*, 213 Ill. App. 3d at 545-48; see also *Bain v. Benefit Trust Life Insurance Co.* (1984), 123 Ill. App. 3d 1025, 1030-31, 463 N.E.2d 1082; *John Bader Lumber Co. v. Employers Insurance* (1982), 110 Ill. App. 3d 247, 249-50, 441 N.E.2d 1306.

■■ In this case, Glenview claims that it did not receive a copy of the policy; however, the certificate of insurance, which Glenview did receive, contains the same language as that found in *Pekin Insurance Co.* The certificate, therefore, only served to inform Glenview that it was covered to the same extent as National Decorating subject to all conditions and exclusions within the policy. Glenview was obligated to examine the policy in order to determine the applicable coverage as well as any exclusions. Although the contract of insurance must be read together with the certificate in order to determine the meaning and effect of the policy (*International Amphitheatre Co.*, 177 Ill. App. 3d at 566), there is no conflict between the two documents, and Glenview's argument fails in this regard.

### III

Glenview asserts that assuming the negligence exclusion is valid, coverage still existed for liability arising from a violation of the Act. National Union responds that courts have applied a negligence standard in determining liability under the Act, thereby precluding coverage based on the negligence exclusion.

In *Davis v. Commonwealth Edison Co.* (1975), 61 Ill. 2d 494, 336 N.E.2d 881, upon which the circuit court based its ruling in the present case, the Illinois Supreme Court discussed the policy behind the Act and the use of the term "wilful" as it applied therein. The court noted that because of the Act's purpose, which is to protect those engaged in particularly hazardous construction work, the term "wilful" has not been construed in its ordinary sense. Instead, " 'a violation of the [Act] is "wilful" when a person having charge of the work knew or, in the exercise of ordinary care, could have known of a dangerous condition.' " (*Davis*, 61 Ill. 2d at 502, quoting Illinois Pattern Jury Instructions, Civil, No. 180.01, Comment, at 468 (2d ed. 1971).) National Union also relies upon *Stifle v. Marathon Petroleum Co.* (7th Cir. 1989), 876 F.2d 552, 555, in which the court cited *Davis* and stated that the interpretation of the Act's "wilful" language "amounts to a typical negligence theory."

The judicial interpretation of "wilful," however, does not necessarily equate a cause of action under the Act with a cause of action for negligence; rather, the construction given to the term recognizes

that the Act was intended to encompass conduct which is less than intentional. The supreme court noted that "it could hardly have been the intention of the legislature to have [the Act's] protection limited to the minority of cases which involve intentional or reckless or wanton conduct." (*Davis*, 61 Ill. 2d at 502.) In short, "[f]ault of some kind is required [under the Act] although it may range from passive negligence to wilful misconduct." (*Cox v. Lumbermens Mutual Casualty Co.* (1982), 108 Ill. App. 3d 643, 647, 439 N.E.2d 126.) A cause of action for common law negligence is neither identical nor tantamount to a statutory cause of action under the Act. See *Simmons v. Union Electric Co.* (1984), 104 Ill. 2d 444, 458-61, 473 N.E.2d 946; *Rynders v. Sangamo Construction Co.* (1982), 103 Ill. App. 3d 552, 554, 431 N.E.2d 1357 ("a violation of the Act is not based on negligence").

■ Exclusionary provisions are applied only where the terms are clear, definite, and explicit. (*Moore*, 103 Ill. App. 3d at 256.) The negligence exclusion in this case denies coverage for liability arising from Glenview's negligence, but is silent as to liability under the Act. No definition of negligence appears in the policy under the applicable endorsement. The expansive construction necessarily required to include a violation of the Act within the meaning of negligence under the subject policy contravenes the rule that insurance policy exclusions be read narrowly rather than broadly. (*Strzelczyk v. State Farm Mutual Automobile Insurance Co.* (1985), 138 Ill. App. 3d 346, 350, 485 N.E.2d 1230, *aff'd* (1986), 113 Ill. 2d 327.) Under the Act an owner, such as Glenview, might be charged with its violation even where it has done nothing but possess the right to control the work, whether that right is exercised or not (*Emberton v. State Farm Mutual Automobile Insurance Co.* (1978), 71 Ill. 2d 111, 119, 373 N.E.2d 1348), a standard much different from traditional negligence concepts. Count I of the underlying complaint alleges a violation of the Act and it contains only general allegations of wilfulness. Although liability under the Act might involve negligent conduct by the violator, it cannot be said as a matter of law that the negligence exclusion *a priori* applies to all violations of the Act. The grant of summary judgment as to coverage of violations under the Act must be reversed.

## IV

In case No. 1—90—3509, National Surety contends that the circuit court erred in holding that Glenview was an insured under its policy for excess and umbrella liability coverage.

As applied to the umbrella liability provisions of the National Surety policy, an "insured" is defined in relevant part as:

"[A]ny person or organization for whose benefit the Named Insured has, prior to time of the Occurrence, agreed in writing to obtain insurance such as is afforded by this policy, but only with respect to the liability of such person or organization arising out of operations for such person or organization by or in behalf of the Named Insured ***."

National Surety argues that because National Decorating did not agree in writing with Glenview to obtain excess and umbrella liability insurance, Glenview is not an insured under the policy. The written contract between the parties required National Decorating to maintain insurance as follows:

"The contractor shall secure and maintain in his own name with the *Glenview Park District specifically noted as additional insured*, Public Liability insurance covering Bodily Injury and Property Damage with limits of not less than one million dollars [per occurrence and in the aggregate]." (Emphasis in original.)

The function of the court in construing an insurance policy is to ascertain and enforce the intention of the parties as expressed in the agreement. (*Moore*, 103 Ill. App. 3d at 255.) The language of the policy is to be liberally construed in favor of coverage, toward the end that the insured is not deprived of the benefit of insurance for which the insurer has been paid, unless the policy terms clearly require a contrary result. *Bellmer v. Charter Security Life Insurance Co.* (1986), 140 Ill. App. 3d 752, 755, 488 N.E.2d 1338.

■ The circuit court properly found that Glenview was an insured under the policy. National Decorating had agreed in writing to secure public liability insurance naming Glenview as an additional insured. National Surety's policy, entitled "Supercover Umbrella and Excess Liability Policy," constitutes public liability insurance. (See *Fidelity General Insurance Co. v. Nelsen Steel & Wire Co.* (1971), 132 Ill. App. 2d 635, 640, 270 N.E.2d 616.) The fact that the policy provides for greater coverage than the minimum prescribed by the contract does not vitiate the policy's inclusion of Glenview as an additional insured.

Although the certificate of insurance clearly states that it conveys no rights to the holder, Glenview was designated as an additional insured on the face of the certificate. The certificate lists four policies of insurance issued to National Decorating, including National Union's primary liability policy and National Surety's excess liability policy, all of which have identical effective dates (August 31, 1987, to August 31, 1988). At the bottom of the certificate, in a space labeled "De-

scription of Operations/Locations/Vehicles/Special Items," there appears "GLENVIEW ICE RINK, GLENVIEW, IL, ADDITIONAL INSURED: GLENVIEW PARK DISTRICT."

Clearly, Glenview was an intended insured under all four policies. The deposition of National Decorating's president also indicates that National Decorating ordered that Glenview be named as an additional insured under both National Union's and National Surety's policies. Under all the evidence, the circuit court did not err in finding that Glenview was an insured under National Surety's policy.

## V

Lastly, National Surety urges error in the circuit court's finding that its policy "dropped down" to provide coverage for Glenview. Glenview responds that National Surety's policy provided primary coverage to Glenview rather than "drop down" coverage.

The "Supercover Umbrella and Excess Liability Policy" provided two types of coverage: excess liability (specified in the policy as coverage A), and umbrella liability (coverage B). Under the policy, the excess liability coverage obligated National Surety "[t]o pay on behalf of the Insured all sums which the Insured shall become obligated to pay as damages arising out of a hazard or hazards covered by the Primary Policy," but only in excess of the primary policy's limits. This type of coverage constitutes traditional "excess" coverage. See 8A J. Appleman & J. Appleman, Insurance Law and Practice §4909.85 (1981).

The "umbrella liability" coverage, as defined by the policy, obligated National Surety:

> "To pay on behalf of the Insured all sums which the Insured shall be obligated to pay as damages by reason of liability imposed on the Insured by law or assumed under Contract because of Personal Injury, Property Damage or Advertising Injury caused by an Occurrence during the Policy Period."

The occurrence limit for umbrella coverage was defined as follows:

> "The limit of the Company's liability stated in the declarations as applicable to 'each occurrence' [$2 million] shall be the total liability of the Company for all damages sustained by one or more persons or organizations as the result of any one Occurrence for Personal Injury, including damages for care and loss of services resulting therefrom, Property Damage or Advertising Injury or any combination thereof."

That section also states that "[t]his insurance shall be excess over any valid and collectible Other Insurance available to the Insured."[1] Such language is a typical "other insurance" clause, commonly contained in primary policies and providing coverage only in excess of any other primary policy. See *Illinois Emcasco Insurance Co. v. Continental Casualty Co.* (1985), 139 Ill. App. 3d 130, 132, 487 N.E.2d 110; 8A Appleman, at §4909.

■ Paragraph O of the policy conditions, entitled "PAYMENT OF LOSS, ACTION AGAINST COMPANY," provides:

> "[T]he Company shall be liable for payment under this policy only after the Insured and the Primary Insurers have paid or become obligated to pay the applicable amount or amounts of such insurance following final judgment against the Insured after actual trial or by written agreement of the Insured, the claimant, the Company and the aforesaid insurers. ***
>
> *With respect to any claim or suit to which the above does not apply, the Company shall be liable for payment under this policy only after the Insured shall have fully complied with all the terms of this policy and the amount of the Insured's obligation to pay shall have been finally determined either by judgment against the Insured after actual trial or by written agreement of the Insured, the claimant and the Company."* (Emphasis added.)

Paragraph O, which applies to both coverages A and B, demonstrates that the policy is not intended solely to provide excess coverage, but also obligates National Surety to defend a claim or suit against the insured to which no primary insurance applies. Coverage B, therefore, provides primary coverage, rather than "umbrella" coverage as the term is commonly understood. See 8A Appleman, at §4909.85.

The policy provision upon which National Surety relies reads:

> "MAINTENANCE OF PRIMARY INSURANCE—insurance afforded by the Primary Policies with limits of liability not less than as stated in the declarations, or renewals or replacements thereof not more restricted, shall be in full effect at the inception of this policy and shall be maintained during the Policy Period, except for reduction of aggregate limits solely as a

---

[1] "Other insurance," as it relates to the policy's umbrella coverage, is

> "[I]nsurance, other than Primary Insurance or insurance which is specifically purchased by the Named Insured to be in excess of the insurance afforded by this policy, which is available to the Insured and affords coverage with respect to injury or damage to which this policy applies."

result of the payment of claims arising out of injury (i) which occurs during the Policy Period or (ii) for which claim is made against the Primary Policy during the Policy Period if said Primary Policy applies on the basis of claims first made or brought during its policy period. If such Primary Insurance is not maintained in full effect by the Insured, or if any limits of liability of a Primary Policy are less than as stated in the declarations, or if Primary Insurance is unavailable to the Insured due to bankruptcy or insolvency of the insurer, or if there is any material change in the coverage under any Primary Insurance, the insurance afforded by this policy shall apply in the same manner as though such Primary Policies and limits of liability had been in effect, so maintained and unchanged."

The circuit court concluded that the paragraph above provided Glenview with coverage which "dropped down" in the absence of primary coverage.

National Surety argues that although the provision mandates conditions which must be met before coverage will "drop down," none of the enumerated conditions precedent was satisfied in this case. The language of the provision, however, does not contemplate "drop down" coverage. (See, *e.g., Donald B. MacNeal, Inc. v. Interstate Fire & Casualty Co.* (1985), 132 Ill. App. 3d 564, 567-68, 477 N.E.2d 1322 (policy language imposed a "drop down" obligation).) Rather, the paragraph provides that when any of the listed conditions occur, National Surety's policy applies as if the primary policy was still in effect.

The cases upon which National Surety relies are distinguishable. In *Hudson Insurance Co. v. Gelman Sciences, Inc.* (7th Cir. 1990), 921 F.2d 92, it was held that the language of an excess umbrella liability policy did not require the excess insurance to "drop down" and provide coverage when the primary insurer became insolvent. The excess umbrella liability policy contained a provision similar to that relied upon by National Surety in this case. The court held that the clause was unambiguous and did not mandate "drop down" coverage. The policy in that case, unlike that in the case *sub judice*, contained a clause which clearly stated that coverage was only in excess of the total underlying primary policy limit. (*Hudson Insurance Co.*, 921 F.2d at 94-95; see also *New Process Baking Co. v. Federal Insurance Co.* (7th Cir. 1991), 923 F.2d 62, 63-64.) In the present case, the excess and umbrella liability policy provides both primary and excess coverage and does not contain language that provides "drop down" coverage.

The circuit court's finding in favor of coverage was proper. Although the circuit court based its finding upon different reasoning, a reviewing court may affirm on any grounds warranted, whether or not they were relied upon below. *Leveck v. Consolidated Rail Corp.* (1986), 148 Ill. App. 3d 118, 129, 498 N.E.2d 529.

For the foregoing reasons, we affirm the circuit court's holding in case No. 1—90—3505 insofar as it upheld the validity of the negligence exclusion in National Union's policy and determined that the certificate of insurance did not conflict with the policy; however, we reverse the court's finding that the negligence exclusion precluded coverage to Glenview for liability arising under the Act. Further, we affirm the court's holding in case No. 1—90—3509.

Affirmed in part; reversed in part and remanded for further proceedings consistent with this opinion.

SCARIANO and DiVITO, JJ., concur.