TRAVELERS INSURANCE COMPANY *et al.*, Plaintiffs-Appellees, v. FREIGHTLINER CORPORATION, Defendant-Appellant.

First District (6th Division)    No. 1—92—2766

Opinion filed November 12, 1993.

Haskell & Perrin, of Chicago (James Kirk Perrin and Stacy Shawn Dick, of counsel), for appellant.

Goggin, Cutler & Hull, of Chicago (David P. Cutler and Petra A. Harris, of counsel), for appellees.

PRESIDING JUSTICE McNAMARA delivered the opinion of the court:

Defendant Freightliner Corporation, an original equipment manufacturer, assembler and seller of trailer truck cabs, distributed and sold trucks containing plaintiff National Seating Company's seats as part of the regular course of its business. In addition, Freightliner's part distribution center stocked and sold National's seats individually upon order.

Freightliner and National were subsequently named as defendants in 48 lawsuits brought in Cook County, Illinois, by truck drivers who claimed that they sustained injuries while driving Freightliner trucks equipped with National seats. Each of the bodily injury complaints against Freightliner alleged in part that the truck drivers' injuries were caused by an unreasonably dangerous condition of the seats which existed at the time the seats left the control of National. The truck seats in the underlying cases were sold by Freightliner to its customer Consolidated Freightways as original equipment in the Freightliner truck cabs. Freightliner had purchased the seats from National for the sole purpose of installing them in its truck cabs. The trailer truck cabs were sold as fleet sales rather than as individual unit retail sales. None of the complaints alleged that Freightliner was a vendor of National's seats.

Freightliner had performed certain overall performance tests on its vehicles of which the National seats may have been a part. No tests were performed by Freightliner exclusive to the seats, however. At one point, Freightliner made a design recommendation to National regarding the seatbelt location attachment points, wherein it recommended that they be revised to better accommodate the seatbelts and tether straps. National did not provide design specifications input for the Freightliner trucks.

National was insured by plaintiff, Travelers Insurance Company, from 1980 to 1987, the time period in question. The relevant Travelers policies were numbered TREE—NSL—17OT992—5—80, 5—83, 5—84, TEE—NSL—17OT992—5—85 and T—GLSA—197T538—5—86. They contained broad form vendor's endorsements.

In letters dated July 10, 1989, and August 8, 1989, Freightliner formally tendered to Travelers its defense to the underlying lawsuits. Travelers, however, never accepted the tender of defense. Rather, on April 27, 1990, it filed this complaint for declaratory judgment. Travelers later filed an amended complaint, and its attorneys produced copies of the insurance policies in question. Freightliner subsequently filed its answer to the amended complaint and, in addition, filed a counterclaim against Travelers.

On September 25, 1991, Freightliner filed a motion for partial summary judgment. Plaintiffs subsequently filed a cross-motion for summary judgment. Subsequent to hearing argument on the cross-motions, the trial court entered summary judgment in favor of plaintiffs and against Freightliner. In its written order, the court held that "Freightliner is not a vendor, but rather a manufacturer, and therefore does not qualify as an insured under the policies in question." It further held that "even if Freightliner had qualified as a vendor, it still must be denied coverage pursuant to exclusion 1(B)(IV) of the policy since it uses the seats as part of a finished product, a truck."

On appeal, Freightliner contends that: (1) it is a vendor entitled to coverage under the terms of the broad form vendor's endorsements contained in the insurance policies issued by Travelers to its insured, National; (2) the "arising out of" language of section 1(B) of the vendor's endorsements limits the applicability of exclusion 1(B)(IV) and does not preclude coverage to Freightliner nor alter Travelers' duty to defend; and (3) Travelers unjustifiably breached its defense duties to Freightliner and thus is estopped from raising any exclusionary policy defenses.

The question in the present case is whether Freightliner qualifies as an additional insured for purposes of the broad form vendor's

endorsements such that it is entitled to coverage under the policies issued by Travelers to National for comprehensive general liability and completed operations and products liability insurance. The answer to the question decides whether Travelers had a duty to defend Freightliner in the underlying litigation. This case is one of first impression in Illinois as no reported case in this State has determined the breadth of coverage provided by this policy extension where the underlying personal injury claims arose from the product, but the product was a component or part of another thing. Before we address Freightliner's contentions, it is appropriate to set forth the policy language at issue as well as the well-settled principles of law in Illinois regarding the duty of an insurer to defend its insured and the construction of insurance policies.

In this case, each of the policies issued by Travelers and purchased by National contained a provision known as the broad form vendor's endorsement. This endorsement modified the terms of the original policy by providing as follows:

## "ADDITIONAL INSURED

## (VENDORS—BROAD FORM)

It is agreed that the 'persons insured' is amended to include any person or organization (herein referred to as 'vendor'), as an insured, but only with respect to bodily injury or property damage arising out of the distribution or sale in the regular course of the vendor's business of the named insured's products subject to the following additional provisions:

1. The insurance with respect to the vendor does not apply to:

(A) Any express warranty, or any distribution or sale for a purpose, unauthorized by the named insured;

(B) Bodily injury or property damage arising out of

(I) Any physical or chemical change in the form of the product made intentionally by the vendor,

(II) Repacking, unless unpacked solely for the purpose of inspection, demonstration, testing or the substitution of parts under instruction from the manufacturer and then repacked in the original container,

(III) Demonstration, installation, servicing or repair operations, except such operations performed at the vendor's premises in connection with the sale of the product, or

(IV) Products which after distribution or sale by the named insured have been labeled or relabeled or used as a container, part or ingredient of any other thing or substance by or for the vendor, or

(V) The sole negligence of the vendor.

2. The insurance does not apply to any person or organization, as insured, from whom the named insured has acquired such products or any ingredient, part or container, entering into, accompanying or containing such products."

It should be noted that the first four Travelers policies listed previously by number contain broad form vendor's endorsements identical to the one above, while Travelers' policy T—GLSA—197T538—5—86 differs slightly, but not significantly for purposes of this case.

■ To determine whether an insurer has a duty to defend its insured, the trial court must look to the allegations in the underlying complaints and compare them to the relevant provisions of the insurance policy. (*Outboard Marine v. Liberty Mutual Insurance Co.* (1992), 154 Ill. 2d 90, 607 N.E.2d 1204.) If the facts alleged in the underlying complaints fall within, or potentially within, the policy's coverage, a liability insurer is obligated to defend an action brought against an alleged insured (*Outboard Marine v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 607 N.E.2d 1204; *National Union Fire Insurance Co. v. Glenview Park District* (1992), 230 Ill. App. 3d 578, 594 N.E.2d 1300), "even if any of the allegations of the suit are groundless, false or fraudulent." (*United States Fidelity & Guaranty Co. v. Wilkin Insulation Co.* (1991), 144 Ill. 2d 64, 73, 578 N.E.2d 926, 930.) If the underlying complaints allege several theories of recovery, the insurer's duty to defend arises even if only one such theory is within the potential coverage of the policy. (*United States Fidelity & Guaranty Co. v. Wilkin Insulation Co.*, 144 Ill. 2d 64, 578 N.E.2d 926.) "When attempting to limit liability, the insurer must show that the claim falls within the exclusion; exclusionary provisions, therefore, are applied only if their terms are clear, definite, and explicit." (*National Union Fire Insurance Co. v. Glenview Park District*, 230 Ill. App. 3d at 582, 594 N.E.2d at 1302-03.) The underlying complaints and insurance policies must be liberally construed in the insured's favor. *United States Fidelity & Guaranty Co. v. Wilkin Insulation Co.*, 144 Ill. 2d 64, 578 N.E.2d 926.

■ An insurer's refusal to defend is unjustifiable, unless it is clear from the face of the underlying complaints that the facts alleged therein do not fall potentially within the coverage of the policy. (*Outboard Marine v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 607 N.E.2d 1204.) In cases where an insurer is uncertain as to the extent its policy provides coverage, it has two options from which to choose. The insurer must either defend under a reservation of rights or must secure a declaratory judgment as to its rights and obligations before

trial or settlement of the underlying actions. (*Central Mutual Insurance Co. v. Kammerling* (1991), 212 Ill. App. 3d 744, 571 N.E.2d 806.) Where the insurer fails to take either course of action, its failure to defend is unjustified, and it is estopped from later raising policy exclusions or defenses in a subsequent action by the insured or the insured's subrogee. *Central Mutual Insurance Co. v. Kammerling*, 212 Ill. App. 3d at 748, 571 N.E.2d at 809.

In construing a provision of an insurance policy, which itself is a question of law, the trial court's primary concern is to effectuate the parties' intent as expressed by the contract. (*Outboard Marine v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 607 N.E.2d 1204; *National Union Fire Insurance Co. v. Glenview Park District*, 230 Ill. App. 3d 578, 594 N.E.2d 1300.) To ascertain such intent and the meaning of the language used in the policy, the court must construe the policy taken as a whole, with regard to the risk undertaken, the subject matter insured and the purposes of the entire contract. (*Outboard Marine v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 607 N.E.2d 1204.) "If the words in the policy are unambiguous, a court must afford them their plain, ordinary, and popular meaning." (Emphasis omitted.) (*Outboard Marine v. Liberty Mutual Insurance Co.*, 154 Ill. 2d at 108, 607 N.E.2d at 1212.) "However, if the words in the policy are susceptible to more than one reasonable interpretation, they are ambiguous [citation] and will be construed in favor of the insured and against the insurer who drafted the policy." *Outboard Marine v. Liberty Mutual Insurance Co.*, 154 Ill. 2d at 108-09, 607 N.E.2d at 1212-13.

With these legal principles in mind, we turn to Freightliner's contentions. Initially, we consider Freightliner's contention that the trial court erred in holding that exclusion 1(B)(IV) under the broad form vendor's endorsements at issue precluded coverage to Freightliner because the company installed the seats manufactured by National in its trucks. We consider this issue first because if exclusion 1(B)(IV) does indeed apply to the present case precluding coverage to Freightliner, then it would become unnecessary to consider whether Freightliner is a vendor for purposes of the broad form vendor's endorsement since Freightliner would still be excluded from coverage even if it was a vendor.

Freightliner contends that it is well settled that exclusion 1(B)(IV) does not apply to exclude coverage where the underlying lawsuits allege injuries arising from a defect in the product which is used as a part or ingredient, rather than something the vendor did in incorporating the part or ingredient into its finished product. More specifically, Freightliner asserts that the fact that it installed

National's seats as part of its finished product, trucks, does not automatically trigger exclusion 1(B)(IV) barring coverage under the Travelers policies. Rather, it contends that in order for exclusion 1(B)(IV) to apply on these facts, the underlying complaints must have alleged that the injuries arose solely from Freightliner's actions of installing the seats as a part or ingredient of its tractor trucks. Freightliner maintains that since virtually all of the 48 underlying complaints contain allegations that the injuries in question arose out of a defective or unreasonably dangerous condition contained in the National seats at the time they left National's control, that is prior to the time the seats were received by Freightliner, exclusion 1(B)(IV) does not apply.

With regard to Travelers' and the trial court's interpretation of exclusion 1(B)(IV), that Freightliner's mere installation of National's seats in its vehicles resulted in its application precluding coverage to it, Freightliner argues that such an interpretation totally ignores the "arising out of" language of exclusion 1(B), which has been held to limit the applicability of the exclusions which follow it, including exclusion 1(B)(IV).

■ We find, however, that the trial court properly held that exclusion 1(B)(IV) precludes coverage for Freightliner, because the underlying complaints specifically allege that Freightliner used National's seats as part of its finished products, trucks. Freightliner admits purchasing the seats from National for the sole purpose of installing them in its trucks, which it did prior to selling the trucks. Thus, according to the plain language of exclusion 1(B)(IV), Freightliner is not entitled to coverage as an additional insured under the broad form vendor's endorsements where the terms of the policies are clear in their meaning and intended application.

We so hold based on a review of the allegations contained in the underlying complaints, a comparison of those allegations to the broad form vendor's endorsements, the policy language at issue, and a review of the admissions made by Freightliner contained in the record. The underlying personal injury complaints filed by truck drivers reveal the presence of the following paragraph or one similar to it in virtually all of them:

> "That on and prior to [date], the seat designed, manufactured, distributed and sold by the defendant, National Seating Company, and incorporated into the tractor designed, manufactured, distributed and sold by the defendant, Freightliner Corporation, was then and there unreasonably dangerous in one or more of the following respects ***."

The paragraph above is evidence of the fact that Freightliner

used the seats manufactured by National in the trucks which it manufactured and sold as a finished product. Further evidence of this is Freightliner's admission that it purchased the seats from National for the sole purpose of installing them into its truck cabs.

A comparison between the allegations in the underlying complaints and the language contained in exclusion 1(B)(IV) of the vendor's endorsements reveals that the facts alleged do not fall within or even potentially within the policies' coverage. (*Outboard Marine v. Liberty Mutual Insurance Co.,* 154 Ill. 2d 90, 607 N.E.2d 1204; *National Union Fire Insurance Co. v. Glenview Park District,* 230 Ill. App. 3d 578, 594 N.E.2d 1300.) It is apparent based on a review of the broad form vendor's endorsement that Travelers intended to additionally insure only those persons or organizations that sold National's seats outright or "off the rack." The drafters made this clear by identifying four types of risk that it would not insure, exclusion 1(B)(IV) being one of them. Insuring manufacturers of other products, who use the National seats as a component part of their finished products, was not a risk Travelers intended to take. This would have undoubtedly created a higher or different risk than contemplated by the drafters, especially when compared to parties who sell the National seats "off the rack" which would present none of the inherent factors that would elevate the risk. (See *Village of Melrose Park v. Nautilus Insurance Co.* (1991), 214 Ill. App. 3d 864, 574 N.E.2d 198.) Certainly an insurer is entitled to limit its liability by excluding from coverage certain risks that it chooses not to take. Moreover, such manufacturers who use the National seats in their own products as part of their own business for their own benefit would presumably have insured themselves. See *Village of Melrose Park v. Nautilus Insurance Co.,* 214 Ill. App. 3d 864, 574 N.E.2d 198.

Exclusion 1(B)(IV) clearly provides that a party who uses an insured's product, after distribution or sale by the named insured, National in this case, as a part of any other thing is excluded from coverage as an additional insured. Here, Freightliner, after purchasing seats from National, used them as a component part in the trucks it manufactured. This is precisely the situation the drafters contemplated and intended to exclude.

The cases relied on by Freightliner to support its position are distinguishable. Freightliner contends that *Sears, Roebuck & Co. v. Reliance Insurance Co.* (7th Cir. 1981), 654 F.2d 494, and *Murray Ohio Manufacturing Co. v. Continental Insurance Co.* (N.D. Ill. 1989), 705 F. Supp. 442, are persuasive authority that exclusion 1(B)(IV) is not applicable in those instances where a plaintiff's injuries arose out of the component part itself, rather than its installation as a part of

another product. In those cases, Freightliner maintains, the courts analyzed the "arising out of" language contained in the vendor's endorsement and found that it limited the applicability of the 1(B)(IV) exclusion. Freightliner further claims that Travelers is in error when it states in its brief that exclusion 1(B)(IV) "is an exclusion that strictly applies to any and all products which are used as parts, without reference to how the bodily injury or property damage arises."

A review of *Sears* and *Murray*, wherein exclusion 1(B)(IV) was held not to apply, reveals that an exception existed to the usual application of exclusion 1(B)(IV) in each case. This was primarily due to the fact that coverage was clearly intended by the parties as evidenced by the putative insureds being named in the policies. Application of the exclusion under those circumstances would have unfairly precluded such coverage. This exclusion 1(B)(IV) exception does not apply, however, to the facts of this case where, despite the fact that the provision contained a blank endorsement, Freightliner was not named. Furthermore, the application of exclusion 1(B)(IV) in *Sears* and *Murray* would have rendered the vendor's endorsement a nullity as no vendor could possibly have been covered. The same is not true here, where the majority of National's customers, those that sell "off the rack," would still be covered.

We agree with plaintiffs' assertion that although the expressed intent to provide coverage explains the trial courts' rationale in deciding to hold exclusion 1(B)(IV) inapplicable in *Sears* and *Murray*, it does not excuse the fact that the "arising out of" language was misconstrued. A close reading of the language reveals that coverage is denied for bodily injury or property damage arising out of products that are used as a part of another thing by or for the vendor. Exclusion 1(B)(IV) does not provide whether or not the injuries in question must "arise out of" a defect in the product. Rather, the exclusion applies strictly to all products which are used as parts, without regard to how the bodily injury or property damage arises.

Lastly, Freightliner contends that Travelers is estopped from raising any exclusionary policy defenses because Travelers unjustifiably breached the defense duties owed to Freightliner as an additional insured. Freightliner asserts that Travelers neither furnished a defense nor responded to its tender of defense. Furthermore, Freightliner claims that Travelers did not reserve its rights under the policy, but rather waited over 10 months before seeking a declaratory judgment which Freightliner alleges was in an attempt to avoid its defense obligation. Freightliner states that it was obliged to and did continue its own defense at its own expense until it was

dismissed from all 48 underlying cases brought against it. Asserting that Travelers failed to meet with the requirements pursuant to Illinois law, Freightliner urges that Travelers should be estopped from relying upon any exclusionary policy provisions to deny coverage. Freightliner argues that it is entitled to reimbursement from Travelers for all sums of money expended in defending itself in the 48 underlying personal injury cases.

Based on our foregoing discussion and a reading of the policy provisions at issue, taken as a whole, we conclude that there was no intent on the part of Travelers to provide coverage to Freightliner under the circumstances of this case. Furthermore, the allegations in the underlying complaints show no potential for coverage. We, therefore, find that the trial court correctly determined, based on the plain language used, that Freightliner is precluded from coverage under the terms of Travelers policies. Consequently, Travelers had no obligation whatsoever to entertain Freightliner's tender of defense as it had no duty to defend. Accordingly, Freightliner's estoppel argument is moot and requires no further consideration.

For the reasons stated, the judgment of the circuit court of Cook County granting summary judgment in favor of plaintiffs and denying Freightliner's motion for partial summary judgment is affirmed.

Judgment affirmed.

EGAN and RAKOWSKI, JJ., concur.