**SCHWINN CYCLING & FITNESS, INC.,
a Delaware corporation, Plaintiff,**

v.

**The HARTFORD ACCIDENT AND IN-
DEMNITY COMPANY, a Connecti-
cut corporation, Defendant.**

No. 93 C 4875.

United States District Court,
N.D. Illinois,
Eastern Division.

Sept. 30, 1994.

Warren Lupel, Lawrence Michael Karlin, Katz, Randall & Weinberg, Chicago, IL, for plaintiff.

Francis P. Cuisinier, Stephen J. Tasch, Law Offices of Shelmerdeane A. Miller, Chicago, IL, for defendant.

## OPINION AND ORDER

NORGLE, District Judge:

Before the court are the cross-motions of plaintiff Schwinn Cycling & Fitness, Inc. ("Schwinn") and defendant The Hartford Accident and Indemnity Company ("Hartford") for summary judgment. For the following reasons, Schwinn's motion is granted and Hartford's motion is denied.

### FACTS [1]

On October 18, 1986, Michael Campbell ("Campbell") sustained disabling injuries while riding a Schwinn bicycle. As a result of his injuries, Campbell filed a product liability lawsuit in the District Court of Johnson County, Kansas ("Campbell Litigation"). At the time of Campbell's accident, Schwinn possessed several layers of excess liability insurance. Each policy representing each layer of insurance coverage contained varying terms of responsibilities, obligations, and limitations. Columbia Casualty Company ("Columbia") issued the policy which provided the first layer of excess insurance ("Columbia Policy"). Under the terms of the Columbia Policy, Columbia agreed to indemnify up to $750,000 over and above Schwinn's self-insured retention limit of $250,000, subject to an aggregate limit of $750,000 for all occurrences during a policy year. Columbia, however, did not assume a duty to provide legal defense.

Great American Surplus Lines Insurance Company ("Great American") provided the second layer of excess insurance ("Great American Policy") in the amount of $2 million over and above Columbia's coverage, subject to $2 million aggregate limit. Unlike the Columbia Policy, the Great American Policy assumed the duty to provide legal defense to Schwinn, under certain circumstances, in the event of a lawsuit against Schwinn. Under the terms of the Great American Policy, the duty to defend Schwinn, however, terminates when its coverage limits are exhausted.

Hartford provided the third layer of excess insurance coverage, in the amount of $3 million over and above the coverage of the Great American Policy, subject to $3 million aggregate limit. With respect to defense costs, the policy obligates Hartford to make proportional contribution if certain contingencies precipitate.

On July 21, 1992, the interested parties in the Campbell Litigation settled the dispute in the amount of $5,169,916 ("Campbell Settlement"). The affected insurance companies, Columbia, Great American, and Hartford, all approved the terms of the settlement and paid the amount each insurance company owed. Hartford paid 52.224 percent of the settlement amount, or $2,699,916.00.

In connection with the Campbell Litigation, Schwinn incurred in excess of $1.5 million in defense costs, including fees for attorneys, court reporters, and expert witnesses. Following the settlement on July 21, 1992, Schwinn demanded that Columbia, Great American, and Hartford pay defense costs in equal proportion to each insurer's contribution to the settlement amount. Columbia and Great American agreed to the demand and paid defense costs accordingly. Hartford, on the other hand, rejected Schwinn's demands. Hartford responded that it never assumed the defense of the Campbell Litigation and has no legal obligation to reimburse Schwinn under the terms of its policy.

In response to Hartford's refusal to pay, Schwinn filed a two-count complaint demanding the sum of $918,131.37 plus pre-judgment interest from the date the defense-cost contribution was due and owing. Schwinn asserts that under the terms of the Hartford Policy, Hartford agreed to pay a pro rata share of the defense costs. Hartford defends

---

1. The following facts are drawn from the parties' statement of material facts as to which there are no genuine issues. The court accepts only those statements of fact that meet the requirements of Rules 12(m) and 12(n) of the Rules of the United States District Court for the Northern District of Illinois ("Local Rules"). Therefore, the court relies on the facts as detailed by Hartford and disregard Schwinn's assertion of purported uncontested facts under ¶¶ 22–28 of its hybrid 12(m)/(n) statement. In presenting these additional facts, Schwinn failed to make specific references to supporting materials as required under Local Rules 12(m) and 12(n).

that it has no obligation to indemnify under the terms of the policy because Schwinn's defense costs were covered in their entirety by the underlying insurance, the Columbia Policy and the Great American Policy.

## DISCUSSION

Resolving coverage disputes that arise between an insured and insurer is often like working on a jig-saw puzzle. The parties invariably agree on the pieces to be assembled, but they disagree on the picture the puzzle will represent once the pieces are fitted together. With a jig-saw puzzle, the pieces are placed by their shapes, sizes and colors. With a coverage dispute, the court is supplied with instructions, in the form of insurance policy terms, on how the pieces are to be arranged. Both Schwinn and Hartford agree on the relevant pieces the court must assemble and the policy terms the court must follow in resolving their dispute. The end result is a picture showing either an obligation to indemnify Schwinn or a proper basis for refusing to indemnify. In this case, the assemblage of the relevant pieces demonstrates that Hartford is under a contractual obligation to indemnify Schwinn for its pro rata share of the defense costs.

Rule 56(c) of the Federal Rules of Civil Procedure provides that a summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Transportation Communications Int'l Union v. CSX Transp., Inc.,* 30 F.3d 903, 904 (7th Cir.1994). Summary judgment is not a discretionary remedy and must be granted when it is warranted. *Jones v. Johnson,* 26 F.3d 727, 728 (7th Cir.1994) (per curiam). Even though all reasonable inferences are drawn in favor of the party opposing the motion, *Associated Milk Producers, Inc. v. Meadow Gold Dairies,* 27 F.3d 268, 270 (7th Cir.1994), presenting only a scintilla of evidence will not suffice to oppose a motion for summary judgment, *Walker v. Shansky,* 28 F.3d 666, 671 (7th Cir.1994).

In this case, the material facts are not in dispute and the adjudication of the coverage issue hinges on the interpretation of the policy terms governing defense costs. In adjudicating the issue before the court, the court will apply and follow the law of Illinois. The court has diversity jurisdiction over the instant action. *See* 28 U.S.C. § 1332. It is a well settled principle that a court exercising diversity jurisdiction and sitting in the State of Illinois must apply Illinois' choice-of-law rules. *Boggs v. Adams,* 838 F.Supp. 1293, 1295 (N.D.Ill.1993); *Colonial Penn Life Ins. Co. v. Assured Enter., Ltd.,* 151 F.R.D. 91, 95 (N.D.Ill.1993). The choice-of-law rules of Illinois require the court to follow the "most significant contacts" approach in identifying the applicable state law in contract disputes. *Palmer v. Beverly Enter.,* 823 F.2d 1105, 1109 (7th Cir.1987); *Continental Casualty Co. v. Armstrong World Indus., Inc.,* 776 F.Supp. 1296, 1301 (N.D.Ill.1991) ("Interpretation of insurance policies under Illinois rules are governed by the law of the state where the policy was issued, delivered, or where the last act completing the policy took place.").

In the case *sub judice,* the court finds that Illinois has the most significant contacts. Schwinn, having its principal place of business in Illinois, filed the instant action in Illinois seeking enforcement of the Hartford Policy. Additionally, the parties negotiated and executed the Hartford Policy in Illinois. Further, in diversity actions, absent a valid challenge by either party as to the choice-of-law, the law of the forum state will govern the substantive issues. *Ness v. Ford Motor Co.,* 835 F.Supp. 453, 456 n. 5 (N.D.Ill.1993). While Hartford asserts in its briefs that the applicable law is that of Illinois, Schwinn does not challenge the asserted choice-of-law. Therefore, the court will look to Illinois to resolve the substantive issue the parties raise in their motions for summary judgment.

Under Illinois law, the interpretation of insurance policy provisions is a question of law for the court and, therefore, subject to resolution in a motion for summary judgment. *Employers Ins. of Wausau v. Bodi–Wachs Aviation Ins. Agency, Inc.,* 846

787

F.Supp. 677, 684 (N.D.Ill.1994). In resolving the question, it is the duty of the court to effectuate the parties' intent as expressed by the terms of the insurance policy. *Travelers Ins. Co. v. Freightliner Corp.*, 256 Ill.App.3d 1049, 194 Ill.Dec. 828, 832, 628 N.E.2d 325, 329 (1993). "Normally contracts are to be taken at face value, and the written agreement is presumed to express the parties' intent." *Board of Trustees of the Univ. of Ill. v. Insurance Corp. of Ireland, Ltd.*, 969 F.2d 329, 332 (7th Cir.1992).

■ To ascertain the intent of the contracting parties, the court must consider the policy as a whole. *Grevas v. U.S. Fidelity and Guar. Co.*, 152 Ill.2d 407, 178 Ill.Dec. 419, 421, 604 N.E.2d 942, 944 (1992). If the terms of the policy are plain and unambiguous, the court must apply the plain, ordinary meaning associated with them. *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 156 Ill.2d 384, 189 Ill.Dec. 756, 761, 620 N.E.2d 1073, 1078 (1993). If, however, the terms are susceptible to more than one reasonable construction, they are deemed ambiguous and interpreted in favor of the insured and against the insurer who drafted the policy. *Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 154 Ill.2d 90, 180 Ill.Dec. 691, 699, 607 N.E.2d 1204, 1212 (1992).

■ Mindful of these axioms, the court begins its analysis by first examining the terms under II(c) of the Hartford Policy, which is the provision Schwinn relies on in making its claim. As reflected under the terms of II(c), the parties agreed to the following:

[Hartford] shall not be obligated to assume charge of the investigation, defense or settlement of any claim or suit against [Schwinn], but [Hartford] shall have the right and shall be given the opportunity to associate with [Schwinn] or its underlying insurers, or both, in the investigation, defense or settlement of any claim or suit which, in the opinion of the company, involves or appears reasonably likely to involve [Hartford]. If [Hartford] avails itself of such right and opportunity, [Schwinn], its insurers and [Hartford] shall cooperate in such matters so as to effect a final determination thereof. [Schwinn] shall not

make or agree to any settlement for an amount in excess of underlying insurance without the approval of [Hartford].

Subject to the above provision, costs incurred by [Schwinn] shall be borne as follows: ... (c) If the sum for which a claim or suit is settled exceeds the limits of underlying insurance, then [Hartford], if it approves such settlement or consents to the continuation of the proceedings, shall contribute to the costs incurred by the insured in the proportion which the amount of ultimate net loss is finally determined to be payable by [Hartford] bears to the total amount paid on such claim or suit by all interests....

(Def.'s 12(m) Stmt. ¶ 11.) The first quoted paragraph establishes unequivocally that Hartford has no general contractual duty to defend Schwinn or to reimburse costs Schwinn expends in defending a lawsuit. While the terms of the first paragraph grant Hartford the right to participate in the defense of a claim made against Schwinn, the plain and ordinary meaning associated with those terms does not warrant a conclusion or even an inference that Hartford had an obligation to defend Schwinn against the Campbell Litigation. *See Crum*, 620 N.E.2d at 1078.

The second quoted paragraph, however, subjects Hartford to the obligation to indemnify a certain portion of the defense cost in the event Hartford approves the terms of a settlement. The approval of a settlement terms is thus a condition precedent to the creation of an obligation to indemnify for "costs incurred by [Schwinn]...." (Def.'s 12(m) Stmt. ¶ 11.) Hartford does not dispute that it approved the terms of the Campbell Settlement. Hence, under subsection (c), Hartford is obligated to indemnify Schwinn for costs it incurred in connection with the Campbell Litigation.

The puzzle, however, is not yet complete. The court must next define the term "costs" in order to determine the extent of Hartford's responsibility with respect to defense costs Schwinn incurred. As indicated previously, the court must employ plain and ordinary meaning associated with the terms in

question, but when the policy itself supplies the definition, the court must enforce the policy definition. *North Am. Specialty Ins. Co. v. Foth,* 861 F.Supp. 709, 712 (N.D.Ill. Aug. 30, 1994). The Hartford Policy defines "costs" to mean "interests on judgment and investigation, adjustment and legal expenses including taxed court costs and premiums on bonds for which [Schwinn] is not covered by underlying insurance...." (Def.'s 12(m) Stmt. ¶ 12.) Under Illinois law, the term "not covered" refers to the fact of coverage, rather than the insurer's ability to indemnify. *Continental Casualty Co. v. Roper Corp.,* 173 Ill.App.3d 760, 123 Ill.Dec. 360, 364–65, 527 N.E.2d 998, 1002–03 (1988).

Applying this definition to the facts of this case, Hartford's obligation to indemnify Schwinn for defense costs is limited to the pro rata share of the total cost not covered by the Columbia Policy and the Great American Policy. The pivotal issue, therefore, is whether Columbia or Great American covered the costs incurred by Schwinn in defending the Campbell Litigation and, if so, the sum of the costs they assumed as risks.

To address that issue, the court must examine the material terms of the underlying excess insurance policies. The Columbia Policy provides that:

> [It] does not cover defense costs, nor interest accruing on a judgment after its entry ... but [Columbia] shall have the right and opportunity to associate with [Schwinn] in the defense, appeal and control of any claim or suit arising out of any occurrence seeking damages in excess of the retained limit. In such an event, [Schwinn] and [Columbia] shall cooperate fully.... If a settlement made with the consent of [Columbia], or a judgment against [Schwinn], exceeds the retained limit, [Columbia] shall pay defense costs and interest accruing on a judgment after its entry and before [Columbia] has paid or tendered or deposited in court that part of the judgment which does not exceed the limit of [Columbia's] liability thereon, in a ratio which its proportion of the liability for the judgment rendered, or settlement made, bears on the entire amount of said judgment or settlement.

(Def.'s 12(m) Stmt. ¶ 7.) The only condition precedent to obligating Columbia to make pro rata contribution to cover defense costs is Columbia's consent to the settlement. In this case, Columbia consented to the Campbell Settlement. Thus, under the terms of the Columbia Policy, Columbia assumed the risk of paying its pro rata share of the defense costs Schwinn incurred in connection with the Campbell Litigation.

■ Undoubtedly, if the Columbia Policy was the only layer between Schwinn's self-retention limit and the coverage under the Hartford Policy, Hartford would be obligated to pay its pro rata share of the costs that remain uncovered. However, there is an additional layer of underlying coverage, the Great American Policy. The terms of the Great American Policy which govern the provision of defense on behalf of Schwinn states that:

> (1) With respect to any personal injury, property damage or advertising injury not within the terms of the coverage of underlying insurance but within the terms of coverage of this insurance; or (2) If limits of liability of the underlying insurance are exhausted because of personal injury, property damage or advertising injury during the period of this policy [Great American] will (a) have the right and duty to defend any suit against [Schwinn] seeking damages on account of such personal injury, property damage or advertising injury, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient; but [Great American] shall not be obligated to pay any claim or judgment or to defend any suit after [Great American's] limit of liability has been exhausted by payment of judgments or settlements....

(Def.'s 12(m) Stmt. ¶ 9.) The plain construction of the preceding provision establishes that Great American's duty to defend Schwinn from lawsuits is also conditional.

Great American's contractual obligation to defend Schwinn arises either where the lawsuit is not covered by the terms of the excess insurance policy underlying the Great Ameri-

can Policy but is covered by the Great American Policy, or where the liability limits of that underlying policy are exhausted during the period of the Great American Policy. One of these two conditions must be satisfied before Great American is contractually obligated to assume legal defense. If the conditions are not met, defense costs Schwinn incurs are not covered by the Great American Policy. Furthermore, even if the condition precedent is satisfied, the duty to defend is not without limitations. According to the material terms, the duty to defend terminates when the liability limits of the Great American Policy are exhausted.

The excess insurance underlying the Great American Policy is the Columbia Policy. In order for one of the conditions precedent to exist, thereby triggering Great American's duty to defend Schwinn, either Campbell's personal injury must not have been covered under the terms of the Columbia Policy or Columbia's liability limits must have been exhausted at the time of the Campbell Litigation. In the case at bar, the facts and the reasonable inferences drawn therefrom demonstrate that neither of the required conditions existed during the relevant period. Therefore, Great American is not obligated to indemnify Schwinn for its defense costs associated with the Campbell Litigation.

■ Having outlined the risks Columbia and Great American assumed with respect to defense costs, the court must now determine what portion of Schwinn's defense costs constitute "costs" as the term is used in the Hartford Policy. Columbia has assumed the risk of indemnifying a pro rata share of the defense cost and Great American has assumed no risk under the facts of this case. Thus, the portion of Schwinn's defense costs which is not covered by the underlying insurance is the amount equal to the difference between the total cost, excluding "(a) all expenses of counsel on general retainer, (b) all office expenses of the insured, and (c) regular fees paid to counsel or general retainer," (Def.'s 12(m) Stmt. ¶ 12), and the pro rata

share of the costs Columbia assumed under its policy.[2]

## CONCLUSION

For the foregoing reasons, Schwinn's motion for summary judgment is granted and Hartford's motion for summary judgment is denied.

IT IS SO ORDERED.

---

2. The court will not attach a dollar figure to the difference because the parties failed to supply the court with the necessary figures for such calcula-

tion. The court will reserve ruling on the exact amount of Hartford's liability under its policy.