PEKIN INSURANCE COMPANY *et al.*, Plaintiffs-Appellants, v. AMERICAN COUNTRY INSURANCE COMPANY, Defendant-Appellee.

First District (6th Division)   No. 1—90—2294

Opinion filed May 3, 1991.

Pretzel & Stouffer, Chartered, of Chicago (Robert Marc Chemers and Scott O. Reed, of counsel), for appellants.

Beermann, Swerdlove, Woloshin & Barezky, of Chicago (Alvin R. Becker, of counsel), for appellee.

PRESIDING JUSTICE RAKOWSKI delivered the opinion of the court:

Plaintiffs Ulbrich & Associates, Inc. (Ulbrich), and its insurer Pekin Insurance Company (Pekin) filed a complaint for declaratory judgment against American Country Insurance Company (American Country), the insurer of S.J. Nitch Contractors (Nitch) and Transcontinental Insurance Company, the insurer of Monarch Construction Company. In their complaint, plaintiffs sought a judicial determination that the insurance certificates issued to Ulbrich provided liability cov-

erage for personal injury claims by the respective insured's employees. Plaintiffs' claim against Transcontinental Insurance Company was voluntarily dismissed, and Transcontinental is not a party to this appeal. American Country then filed a motion for a judgment on the pleadings which the trial court granted. The issue on appeal is whether the trial court erred in failing to find an ambiguity or conflict between the certificate of insurance and the policy where the policy contained an exclusion for any damage or injury arising out of roofing work, and the certificate was issued to a general contractor at the request of a subcontractor engaged in roofing work.

Nitch, the insured of American Country, was a subcontractor of Ulbrich on a construction project in Barrington, Illinois. As part of its contract with Ulbrich, Nitch agreed to indemnify Ulbrich against all claims, damages, losses or expenses arising out of the subcontractor's work on the project. In conjunction with this provision of the contract, Nitch had its insurer, American Country, provide Ulbrich with a certificate of insurance. The certificate identified Nitch as the primary insured, Ulbrich and the Lake Barrington project as additional insureds and American Country as the insurer. Under the heading "Type of Insurance," one of the categories marked was commercial general liability. The policy numbers and dates of coverage were also on the certificate. In addition to this information, the certificate contained the following statement at the top of the document:

> "THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW."

The certificate also contained the following statement near the middle of the same page:

> "THIS IS TO CERTIFY THAT POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICES DESCRIBED HEREIN IS SUBJECT TO ALL OF THE TERMS, EXCLUSIONS, AND CONDITIONS OF SUCH POLICES."

Anthony Cargill, an employee of Nitch, sustained personal injuries while working on the construction project and filed a complaint

against Ulbrich regarding these injuries. Ulbrich and its insurer Pekin then tendered the defense of the Cargill lawsuit to American Country. American Country refused to defend the suit, and in a letter to Ulbrich, American Country stated that the policy identified in the certificate contained the following exclusion:

> "COMMERCIAL GENERAL LIABILITY COVERAGE
>
> This insurance does not apply to 'bodily injury', 'property damage', 'personal injury' or 'advertising injury' arising out of 'your work' shown in the schedule."

American Country further stated:

> "The schedule which indicates the description of S. J. Nitch's work indicates "roofing-construction residential or commercial."

Pekin and Ulbrich then filed a complaint for declaratory judgment alleging that American Country should accept plaintiffs' tender of defense because plaintiffs had relied on the representations in the certificate of insurance that Ulbrich was an additional insured on a policy issued to Nitch which was identified in the certificate. Plaintiffs were subsequently granted leave to amend their complaint to add the "tort plaintiff" Cargill as a party defendant. Several months later American Country filed a motion for a judgment on the pleadings, contending that no genuine issue of material fact was raised by the pleadings and that as a matter of law the Cargill claim was excluded from coverage. After hearing oral argument, the trial court granted American Country's motion and entered a final judgment.

Plaintiffs contend that because the exclusions, terms or conditions of American Country's insurance policy conflict with the plain meaning of the certificate, and plaintiffs were not provided with a copy of the policy or made aware of the exclusions, the coverage provided by the certificate should prevail. Plaintiffs claim that because the certificate named Ulbrich as an additional insured on a policy which provided commercial general liability insurance for the project, but the policy excluded coverage, there is a conflict between the two documents. Plaintiffs acknowledge that it was Nitch who promised to indemnify Ulbrich against any liability arising from Nitch's roofing work on the Lake Barrington project and who breached this provision of the Ulbrich-Nitch contract by providing a certificate for a policy which excluded roofing work. However, plaintiffs claim that it is American Country rather than Ulbrich who should bear the risk of this breach. In support of their argument, plaintiffs rely on *International Amphitheatre Co. v. Vanguard Underwriters Insurance Co.* (1988), 177 Ill. App. 3d 555, 532 N.E.2d 493, and *J.M. Corbett Co. v.*

*Insurance Co. of North America* (1976), 43 Ill. App. 3d 624, 357 N.E.2d 125. In *International Amphitheatre,* the certificate of insurance contained an exclusion for claims arising from the nonappearance of performers and also stated that only indoor concerts were warranted. There were also two exclusions in the insurance policy which were not identified in the certificate. One exclusion limited coverage to the negligence of the named insured, and the other exclusion was for security and crowd control. The court concluded that the latter exclusions created an ambiguity in the agreement between the parties because the certificate was silent as to these exclusions, the additional insureds were not given a copy of the policy, and there was no showing that they were aware of the policy exclusions. The court also stated that there was no showing that the certificate was not part of the insurance contract and could not be relied on by the parties. Based on these facts, the court held that the uncertainty or ambiguity in the certificate and policy should be resolved in favor of the insureds. *International Amphitheatre Co.,* 177 Ill. App. 3d at 569-70.

In *J.M. Corbett Co. v. Insurance Co. of North America,* the certificate contained the statement:

> "It is understood and agreed that the Subcontractor will indemnify and save harmless the Contractor from and against any and all claims for injury or death to persons or damage to property \*\*\* in any matter caused by, arising from, incident to, connected with or growing out of work to be performed under this Contract, regardless of whether such claim is alleged to be caused, in whole or in part, by negligence, or otherwise, on the part of the Contractor or its employees." (*J.M. Corbett Co.,* 43 Ill. App. 3d at 625.)

The policy contained an exclusion for rented vehicles which was not indicated in the certificate, and the plaintiffs were not provided with a copy of the policy. The court held that the indemnity provision in the certificate conflicted with the exclusion provision of the policy and that when the two documents were read together an uncertainty existed which should be resolved in favor of the party indemnified. *J.M. Corbett Co.,* 43 Ill. App. 3d at 626-27.

■ Although both of these cases are factually similar to the instant case in some respects, the factor which distinguishes them from this case is the language in the certificate which states:

> "THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES

NOT AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW."

"THIS IS TO CERTIFY THAT POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL OF THE TERMS, EXCLUSIONS, AND CONDITIONS OF SUCH POLICIES."

Thus, unlike *International Amphitheatre Co.* and *J.M. Corbett Co.*, there was a clear showing, based on the statements above, that the certificate was not part of the policy, and it conveyed no rights to the certificate holder. These statements also informed Ulbrich as a certificate holder that it had to look to the policy to determine the extent of coverage as well as any existing exclusions. *J.M. Corbett Co.* is further distinguishable because the certificate in that case contained the indemnity provision cited above which provided broad coverage in a variety of situations and conflicted with the exclusion provisions in the policy.

In this case, not only was there no such provision, but the certificate specifically stated that any contract for which the certificate was issued was *"subject to all of the terms, exclusions, and conditions of such policies."* (Emphasis added.)

Although plaintiffs argue to the contrary, we find *Lezak & Levy Wholesale Meats, Inc. v. Illinois Employers Insurance Co.* (1984), 121 Ill. App. 3d 954, 460 N.E.2d 475, most factually similar to this case. In *Lezak & Levy*, the certificate of insurance contained the same disclaimer provisions found in this case. The *Lezak & Levy* court held that there was no conflict between the certificate and the policy because the certificate stated that it was not a separate policy, conveyed no rights to the certificate holder and that it did not expand or amend the terms of the policy. In conclusion, the *Lezak & Levy* court stated that the parties recognized that they were required to refer to the policy in order to determine the extent of coverage including any exclusions.

Like the certificate in *Lezak & Levy*, the certificate in this case only served to inform Ulbrich that it had the same insurance coverage that the primary insured had for the Lake Barrington project subject

to all of the terms and exclusions within that policy. Thus, we conclude that there was no conflict between this certificate and the insurance policy.

■ Plaintiffs argue that there was an ambiguity in the certificate at issue because the language of the certificate implied that some form of insurance was provided but the exclusion in the policy excluded all possible coverage for the Lake Barrington project. However, pursuant to the statements in the certificate, the plaintiff was advised to look to the policy to ascertain the nature and extent of coverage. We conclude that it was also Ulbrich's responsibility rather than American Country's to determine whether this coverage was adequate for its intended purpose. To hold otherwise would place an excessive burden on insurers to review all construction contracts in order to determine the insurance needs of the project prior to issuing a certificate of insurance. Lastly, although plaintiffs argue that they never received a copy of the policy, there is no evidence in the record that they requested one.

Accordingly, the judgment of the circuit court is affirmed.

Judgment affirmed.

McNAMARA and LaPORTA, JJ., concur.