FOURTH DIVISION

                                        August 06, 1998

                                         

            

No. 1-97-0032

AMERICAN COUNTRY INSURANCE COMPANY, ) APPEAL FROM THE

an Illinois corporation, ) CIRCUIT COURT OF

, ) COOK COUNTY

           Plaintiff-Appellant, )

)

           v. )  No. 95 CH 10940

)                  

KRAEMER BROTHERS, INC., a Foreign )

Corporation, UNITED STATES FIDELITY & )

GUARANTY, a Foreign Corporation, AND )  HONORABLE

ROBERT G. COZZI, )  JOHN K. MADDEN,

)  JUDGE PRESIDING.

           Defendants-Appellees. )

JUSTICE McNAMARA delivered the opinion of the court:

Plaintiff, American Country Insurance Co. (American Country), brought this action against defendants, Kraemer Brothers Construction Co. (Kraemer) and United States Fidelity and Guarantee Co. (USF&G), seeking a declaratory judgment that it had no duty to defend or indemnify Kraemer, its additional insured under a commercial general liability insurance policy issued to D.H. Johnson Construction Co. (D.H. Johnson), with respect to a personal injury lawsuit brought by an employee of D.H. Johnson to recover for injuries suffered in a construction accident.  Plaintiff filed a motion for summary judgment and defendants filed a cross-motion for summary judgment.  After hearing argument on the motions, the trial court entered summary judgment in favor of defendants and against plaintiff.  Plaintiff appeals.  The relevant facts are as follows.

Kraemer agreed to act as general contractor for the construction of a hotel in Elgin, Illinois (the project).  Kraemer entered into a subcontract with D.H. Johnson for the performance of masonry work on the project.  Pursuant to the terms of the subcontract, D.H. Johnson was required to have Kraemer named as an additional insured on its commercial general liability insurance policy.

From November 30, 1993, to November 30, 1994, D.H. Johnson was the named insured on a commercial general liability policy (CGL), No. CMP 0003503 00, issued by plaintiff, American Country.  Plaintiff had authorized the South Suburban Insurance Agency (South Suburban) to issue certificates adding entities as additional insureds on the CGL.  South Suburban issued a certificate to Kraemer on December 20, 1993, naming Kraemer as an additional insured on D.H. Johnson's CGL policy.  The certificate contained no policy number but, rather, the term "binder."  Kraemer received the certificate on December 26, 1993.  The CGL policy was not actually written until January 21, 1994.  Kraemer was also the named insured on a separate CGL policy issued by USF&G.  

On March 1, 1995, a complaint was filed by Robert Cozzi, an employee of D.H. Johnson working at the project, alleging that he was injured on January 7, 1994, when he slipped and fell on an unnatural accumulation of snow and ice (the Cozzi lawsuit).  He alleged that Kraemer was negligent in its maintenance and supervision of the project.  He did not name D.H. Johnson as a defendant in the suit.

Kraemer filed a third-party complaint for contribution against D.H. Johnson on April 30, 1996, alleging that D.H. Johnson was negligent in its maintenance and supervision of the project and thereby contributed to Cozzi's injuries.  

After being served with the Cozzi lawsuit, Kraemer tendered its defense to plaintiff.  Kraemer informed plaintiff that Kraemer had put its own general liability insurer, USF&G, on notice of the suit, but had instructed USF&G not to engage in its defense or indemnification regarding the Cozzi lawsuit.  Kraemer notified plaintiff that it had, pursuant to 
Institute of London Underwriters v. Hartford Fire Insurance Co.
, 234 Ill. App. 3d 70, 599 N.E.2d 1311 (1992), elected that plaintiff was to exclusively defend and indemnify Kraemer.  Plaintiff rejected tender of Kraemer's defense and on November 13, 1995, filed a complaint for declaratory judgment.  

Plaintiff filed a motion for summary judgment on May 20, 1996, arguing that it had no duty to defend Kraemer in the Cozzi lawsuit based on three separate endorsements to the policy.  The first endorsement provides:

"1. 'Who is an Insured' is amended to include as an Insured the person or organization shown in the schedule as an Additional Insured.  The coverage afforded to the Additional Insured is solely limited to liability specifically resulting from the conduct of the Named Insured which may be imputed to the Additional Insured.

*********************************************

3. This endorsement provides no coverage to the Additional Insured for liability arising out of the claimed negligence of the Additional Insured, other 

 than which may be imputed to the Additional Insured by virtue of the conduct of the Named Insured."

Plaintiff argued that because the Cozzi lawsuit did not name D.H. Johnson as a defendant or accuse D.H. Johnson of any misconduct that might be "imputed" to Kraemer, the Cozzi lawsuit failed to allege facts bringing Kraemer within the potential scope of coverage.

The second endorsement relied on by plaintiff added the following to the "Duties In The Event of Occurrence, Claim or Suit" paragraph:

"(5) Promptly give notice of an 'occurrence', an offense which may result in a claim, a claim which is made or a 'suit', to any other insurer which has available insurance for a loss we cover under Coverages A or B of this coverage part.

(6) Promptly tender the defense of any claim made or 'suit' to any other insurer which also has available insurance for a loss which we cover under Coverages A or B of this coverage part."

Plaintiff argued that because Kraemer did not tender the defense of the Cozzi lawsuit to USF&G, Kraemer breached the cooperation clause of the CGL policy, relieving plaintiff of any duty to defend or indemnify.

The third endorsement relied on by plaintiff provides:

"B. Notwithstanding any other provisions herein contained, this policy shall apply as excess only, over any other valid and collectible insurance which would apply in the absence of this policy."

The USF&G policy, on the other hand, provides that it is primary. Plaintiff argued that reading these provisions together, the American Country policy affords excess coverage only and the USF&G policy affords primary coverage.  Therefore, plaintiff had no duty to defend pursuant to the following provision of the American Country policy:

"When this insurance is excess, we will have no duty under Coverage A or B to defend any claim or 'suit' that any other insurer has a duty to defend."

 Defendants filed a cross-motion for summary judgment arguing that the aforesaid endorsements could not be asserted by plaintiff because they were not in existence at the time of the accident and were never communicated to Kraemer.  The accident occurred on January 7, 1993, but the policy was not written until January 21, 1993, two weeks after the accident.  The defendants also argued that the imputed negligence endorsement could not be asserted because Kraemer had filed a third-party complaint against D.H. Johnson and because to allow plaintiff to assert this endorsement would make the coverage illusory.  Finally, defendants argued that the endorsement requiring the additional insured to tender it's defense to other insurance carriers is in direct contravention of Illinois public policy and should not be enforced.

Plaintiff responded first by noting that the certificate of insurance states in large bold print:

"THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER.   THIS CERTIFICATE DOES NOT AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW."

It further states:

"COVERAGES

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED.  NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES.   LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS."

Therefore, plaintiff argued, defendants must look to the policy to determine coverage rights and cannot claim coverage under the binder.  Plaintiff further responded that the duty to defend is governed exclusively by the allegations in the injured parties' complaint, making the third-party complaint filed by Kraemer irrelevant.  Furthermore, plaintiff argued that the third-party complaint filed by Kraemer was merely a ploy to enhance defendants' coverage case.  Finally, plaintiff responded that there is no clearly delineated public policy against the  endorsement requiring tender of the Cozzi lawsuit to USF&G.

The trial court entered summary judgment in favor of the defendants, finding that plaintiff had a duty to defend Kraemer.
(footnote: 1)  Plaintiff's motion for reconsideration was denied and this appeal followed.

On appeal plaintiff contends that the trial court erred in finding that plaintiff had a duty to defend Kraemer in the Cozzi lawsuit because: (1) an insured who receives a certificate of insurance certifying that the policy has issued is bound by the terms of the policy despite the fact that the loss occurs before the policy declarations are completed; (2) Kraemer has forfeited any right to a defense by failing to tender the defense of the underlying suit to USF&G as required by the provisions of plaintiff's CGL policy; and (3) American has no duty to defend Kraemer under a policy covering negligence of D.H. Johnson imputed to Kraemer, where the only allegations of negligence against D.H. Johnson appear in a third-party complaint filed by Kraemer.         

We first note that summary judgment is properly granted if the pleadings, depositions, and admissions on file, together with any affidavits, show there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.  
State Farm Mutual Automobile Insurance Co. v. Collins
, 258 Ill. App. 3d 1, 629 N.E.2d 762 (1994).  Our review of an order granting summary judgment is 
de novo
.  
Village of 
Hoffman Estates v. Cincinnati Insurance Co.
, 283 Ill. App. 3d 1011, 670 N.E.2d 874 (1996).

Plaintiff first contends that because Kraemer received a certificate of insurance, it is bound by the terms of the policy, despite the fact that the loss occurred before the policy declarations were completed.  Specifically, plaintiff contends that Kraemer cannot rely on the certificate to ascertain the extent of coverage.  Kraemer contends that the plaintiff cannot assert the exclusions in the policy to deny coverage because the plaintiff issued a certificate of insurance promising broad general liability coverage, and the policy terms, exclusions and conditions were unwritten and undisclosed at the time of the loss.

The decision in 
Pekin Insurance Co. v. American Country Insurance Co.
, 213 Ill. App. 3d 543, 572 N.E.2d 1112 (1991), is instructive on this issue.  In that case a general contractor was named an additional insured on a commercial general liability policy procured by a subcontractor.  The certificate of insurance issued to the general contractor by the insurer indicated that it was a commercial general liability policy but specified no exclusions, terms or conditions of the policy.  The certificate also included a disclaimer stating that it "is issued as a matter of information only" and that "the insurance afforded by the policies described herein is subject to all of the terms, exclusions, and conditions of such policies." 213 Ill. App. 3d at 544.  The general contractor never received a copy of the policy.   An employee of the subcontractor who was injured while doing roofing work filed a complaint against the general contractor.  The insurer refused to defend the action, citing an exclusion in the policy for injuries arising from roofing work.  The general contractor contended that because the exclusions, terms and conditions of the policy conflicted with the plain meaning of the certificate and plaintiffs were not provided with a copy of the policy, the broad general liability coverage provided by the certificate should prevail.

The court disagreed, holding that the disclaimers clearly showed that the certificate was not part of the policy and that the certificate holder had to look to the policy to determine the extent of coverage.  The certificate only served to inform the general contractor that it had the same coverage as the subcontractor.  The court held that the terms of the policy prevailed and the defendant had no duty to defend.

The presence or absence of such a disclaimer on the certificate of insurance determines whether an insured may rest its coverage case on representations made in the certificate.  If the certificate does not include a disclaimer, the insured may rely on representations made in the certificate.  See 
John Bader Lumber Co. v. Employers Insurance
, 110 Ill. App. 3d 247, 441 N.E.2d 1306 (1982); 
International Amphitheatre Co. v. Vanguard Underwriters Insurance Co.
, 177 Ill. App. 3d 555, 532 N.E.2d 493 (1988).  If the certificate includes a disclaimer, the insured may not rely on representations made in the certificate but must look to the policy itself to determine the scope of coverage.  See 
Pekin Insurance Co. v. American Country Insurance Co.
, 213 Ill. App. 3d 543, 572 N.E.2d 1112 (1991); 
Lezak & Levy Wholesale Meats, Inc. v. Illinois Employers Insurance Co.
, 121 Ill. App. 3d 954, 460 N.E.2d 475 (1984)
.

The certificate issued to Kraemer in this case contained a disclaimer identical to the one in 
Pekin Insurance Co.
.  Kraemer was on notice that it had to look to the policy to determine the extent of coverage and any exclusions, yet the record indicates that Kraemer did not even request a copy of the policy.  The certificate of insurance clearly provided that it was not part of the policy and that the insured had to look to the policy to ascertain the extent of coverage.  Therefore, Kraemer is bound by the exclusions and conditions of the policy.

Plaintiff next contends that the trial court erred in finding that the policy provision requiring that Kraemer tender defense of the suit to any other insurer with applicable insurance violated public policy.  Specifically, plaintiff contends that the tender provision does not violate public policy and that Kraemer breached the cooperation clause of the policy by failing to tender the defense of the Cozzi lawsuit to USF&G, thereby forfeiting any right to a defense.  

While there is no precise definition of public policy, it has been held that public policy is to be found in the constitution, in statutes and in judicial decisions.  
American Federation of State, County & Municipal Employees v. State
, 124 Ill. 2d 246, 529 N.E.2d 534 (1988).  

American Country's policy contained the following provision:

"Promptly tender the defense of any claim made or 'suit' to any other insurer which also has available insurance for a loss which we cover under Coverage A or B of this coverage part."

This clause was not contained in the policy at issue in the case of 
Institute of London Underwriters v. Hartford Fire Insurance Co.
, 234 Ill. App. 3d 70, 599 N.E.2d 1311 (1992), where it was held that the insured had the right to choose both or only one of its insurers to defend the action.  In the case 
sub
 
judice
, the insurance policy required the insured to promptly tender the defense to any other insurer with available insurance.  The USF&G policy is available insurance to which Kraemer refused to tender its defense.  Kraemer clearly breached the terms of the American Country policy and is not entitled to a defense or indemnity.  

The Illinois Department of Insurance accepted American Country's additional insured and notice and tender to other insurers endorsements.  The court in 
Kirk v. Financial Security Life Insurance Co.
, 75 Ill. 2d 367, 376,  389 N.E.2d 144 (1978), held that approval of insurance policies by the Illinois Department of Insurance, "although not conclusive upon the courts, is however, entitled to great weight as against the contention that such a provision is against public policy."  We agree.  Since there is no established public policy for this clause, we believe that the provision in the policy requiring Kraemer to tender its defense is entitled to great weight and is not against any public policy.   

The court in 
Institute of 
London Underwriters v. Hartford Fire Insurance Co.
, 234 Ill. App. 3d 70, 599 N.E.2d 1311 (1992), held that based on the insurance policy, the insured was free to choose which insurer would defend the claim.  The policy in 
London Underwriters
 did not contain a policy provision requiring the insured to tender its defense to another insurer.  The insurance policy before us is different from the policy before the court in 
London Underwriters
.  

There is no established public policy regarding a provision in an insurance policy that specifically limits an insured's freedom to select which insurer will defend.  Insurance policies vary; some policies require that certain conditions occur before coverage arises.  Those provisions have not been held to be against public policy.

The analysis made by the court in 
Braye v. Archer-Daniels-Midland
 Co.
, 175 Ill. 2d 201, 676 N.E.2d 1295 (1997), is instructive.  At issue in that case was whether an employer could enter into a valid and enforceable contractual agreement to waive the 
Kotecki
 v. Cyclops Welding Corp.
, 146 Ill. 2d 155, 585 N.E.2d 1023 (1991), limitation on the employer's contribution liability.  The court held that an employer could waive that limitation.  The court in 
Braye
 pointed out:

"As a general principle of contract law, statutes and laws in existence at the time a contract is executed are considered part of the contract.  
Larned v. First Chicago Corp.
, 264 Ill. App. 3d 697 (1994).  It is presumed that parties contract with knowledge of the existing law.  
Monroe Dearborn Ltd. Partnership v. Board of Education
, 271 Ill. App. 3d 457 (1995).  Additionally, we recognize that a construction of a contract which renders the agreement enforceable rather than void is preferred."  
Braye
, 175 Ill. 2d at 217, 676 N.E.2d at 1303.

In the case 
sub
 
judice
, at the time of the contract there were no Illinois statutes or insurance regulations that prohibited a construction contractor from entering into an insurance contract that limited his choice as to which insurer would defend the contractor.  Also, there were no Illinois cases that ruled that one could not contract to limit an insured's choice of insurers to defend.

Crucial to the decision in 
Braye
 was the principle:

"The laws and the public policy of the state permit and require freedom of contracting between competent parties.  
Electrical Contractors' Ass'n v. A.S. Schulman Electric Co.
, 391 Ill. 333 (1945), citing 
Zeigler v. Illinois Trust & Savings Bank
, 245 Ill. 180 (1910)."  
Braye
, 175 Ill. 2d at 215, 676 N.E.2d at 1303.

We hold that the law and the public policy of this state permitted the insured construction contractors to limit the choice as to which insurer would defend.  American Country's insurance policy provision requiring Kraemer to tender the defense to another available insurer was a valid enforceable provision.  The contractors and American Country were competent parties to this insurance policy, and they had the freedom to enter into this insurance contract.  We believe that the construction of this insurance policy as being enforceable rather than void is preferred.

Another issue in this case is whether American Country had a duty to defend Kraemer, an additional insured, under an insurance policy covering negligence of the named insured imputed to the additional insured where the only allegations of negligence against the named insured appear in a third-party complaint filed by the additional insured.  The complaint in the underlying lawsuit did not name D.H. Johnson as a defendant nor allege any negligence against D.J. Johnson that could be imputed to Kraemer.   In view of our holding that Kraemer breached a provision of the policy and is not entitled to a defense, it is not necessary to address this issue.  Nevertheless, we find that the allegations in the complaint and third-party complaint are not within the scope of coverage.  The pleadings allege only the negligence of Kraemer, and the policy provides coverage if liability is imputed to Kraemer because of the negligence of D.H. Johnson.  
Village of Hoffman Estates v. Cincinnati Insurance Co.
, 283 Ill. App. 3d 1011, 670 N.E.2d 874 (1996).  Also, if the claim is brought by an employee of the subcontractor, as was done in this case, the negligence cannot be imputed to the general contractor.  
Apostal v. Oliveri Construction Co.
, 287 Ill. App. 3d 675, 678 N.E.2d 756 (1997).   

Kraemer alleges that its coverage was illusory because it is difficult to imagine any factual scenario wherein Kraemer could be held vicariously liable for a subcontractor's acts or omissions at the jobsite.  However, the imputed negligence coverage in the policy includes claims based in strict liability where the general contractor is held to have a duty that it cannot delegate to someone else.  Restatement (Second) of Torts, sections 416 through 429 (1965).

Illinois courts do impose strict liability.  In the case of 
St. Paul Fire & Marine Insurance Co. v. Frankart
, 45 Ill. App. 3d 29, 33-34, 358 N.E.2d 720, 722-23 (1976), strict liability was applied to someone carrying on an activity that could be carried on lawfully only under a franchise granted by a public authority.  Strict liability is also imposed in cases where there are inherently dangerous activities.  
Clark v. City of Chicago
, 88 Ill. App. 3d 760, 764, 410 N.E.2d 1025, 1029 (1980).  Just because there are fewer strict liability claims than negligence claims does not make the coverage illusory.  There is real coverage for strict liability claims.

We find that the American Country policy provision obligating the insured to tender the defense of the suit to any other insurer with available insurance was valid and because Kraemer breached this provision it is not entitled to defense or indemnity.

The summary judgment entered against American Country is reversed and vacated.  Summary judgment is entered in favor of American Country.

Reversed.

CERDA, P.J., and SOUTH, J., concur.

FOOTNOTES
1:
The trial court held that the issue of indemnification was not ripe and would be addressed at a later time.