WEST AMERICAN INSURANCE COMPANY, Plaintiff-Appellant and Cross-Appellee, v. J.R. CONSTRUCTION COMPANY, Defendant-Appellee and Cross-Appellant.

First District (2nd Division)   Nos. 1—01—2068, 1—00—3341 cons.

Opinion filed September 24, 2002.

Robert Marc Chemers and Scott L. Howie, both of Pretzel & Stouffer, Chtrd., of Chicago, for appellant.

John G. Pfeiffer and Kathryn Wyatt, both of Zimmerman, Pfeiffer & Adams, of Chicago, for appellee.

PRESIDING JUSTICE McBRIDE delivered the opinion of the court:

This dispute[1] arises out of a declaratory judgment action filed by plaintiff-appellant and cross-appellee, West American Insurance Company (West American), against defendant-appellee and cross-appellant, J.R. Construction Company. The declaratory judgment complaint was brought against J.R. Construction as a result of a lawsuit filed against J.R. Construction by an injured employee of All Estimating, Inc. (All Estimating), a subcontractor of Altra Steel (Altra), also a subcontractor of J.R. Construction. J.R. Construction tendered the defense of that suit to West American and it denied coverage. On a motion for partial summary judgment, the trial court found in favor of J.R. Construction on the issue of coverage and further found that West American was estopped from asserting any policy defenses. The court also denied J.R. Construction's request for damages under section 155 of the Illinois Insurance Code (215 ILCS 5/155 (West 1998)).

The issues raised on appeal are: (1) whether the trial court properly granted summary judgment in favor of J.R. Construction on West American's duty to defend; (2) whether West American was barred from denying coverage on the ground of estoppel; and (3) whether J.R. Construction was entitled to damages from West American under section 155 of the Illinois Insurance Code (215 ILCS 5/155 (West 1998)). We state the following background facts.

West American issued a general liability insurance policy, number BKW (97)52109160, to Altra, a steel fabrication subcontractor, for the period December 31, 1996, to December 31, 1997. J.R. Construction, the general contractor, contracted with Altra to supply and install steel components for a building being constructed for the Fuchs Lubricants Company in Harvey, Illinois. Altra subcontracted with All Estimating to assist with some of the ironwork on the project. The record shows that a term of the agreement between Altra and J.R. Construction required that J.R. Construction be added as an insured on the policy issued to Altra by West American. Joseph Ramacci, president of J.R. Construction, stated in an affidavit that Altra orally agreed to obtain this insurance for his company. He further said that

---

[1]After the original appeal and cross-appeal had been filed by the parties, appellate case number 1—00—3341 was remanded to the trial court because two issues on the question of damages had not yet been resolved. The trial court amended its August 28, 2000, order and the parties then filed a new appeal and cross-appeal in appellate case number 1—01—2068. On November 14, 2001, this court consolidated the cases.

it was the corporate practice of J.R. Construction to require subcontractors to include J.R. Construction as an additional insured on their policies.

On July 29, 1997, the Braman Agency, West American's agent, issued a certificate of insurance listing J.R. Construction as an additional insured on the policy at issue. The certificate stated:

"THIS CERTIFICATE WAS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW."

On October 10, 1997, Charles Masunas, an employee of Altra's subcontractor, All Estimating, was injured at the Fuchs jobsite. Masunas filed a lawsuit (the underlying suit) against J.R. Construction, "by and through its agents, servants and employees," for failure to supervise, inspect, and prevent unsafe conditions at the jobsite. Specifically, the underlying complaint alleged that J.R. Construction was negligent in that it:

"(a) Failed to make a reasonable inspection of the premises and the work being done thereon, when the Defendant knew, or in the exercise of ordinary care should have known, that said inspection was necessary to prevent injury to the Plaintiff;

(b) Improperly operated, managed, maintained and controlled the aforesaid premises, so that as a direct and proximate result thereof, the plaintiff was injured ***."

On October 23, 1997, J.R. Construction tendered the underlying suit to West American. J.R. Construction also tendered the defense to All Estimating's insurer, Agora Syndicate, Inc. (Agora), which had listed J.R. Construction as an additional insured on that policy. Agora agreed to defend J.R. Construction and continued to do so until it became insolvent.

In a letter dated November 14, 1997, West American acknowledged J.R. Construction's tender by stating, "[t]his will confirm that J.R. Construction Company is listed as an additional insured under Altra Steel's policy." The letter further stated, "[a]ny coverage provided here under shall be excess over any other valid or collectable insurance available to the additional insured whether primary, excess, contingent or on any other basis unless the contract specifically requires that this insurance be primary or you request that it apply on a primary basis." The record reveals that this language only appears in paragraph 4b of the blanket additional insured endorsement to the West American policy. The letter concluded by stating: "It is our position that any potential coverage available to the additional insured, J.R. Construction [C]ompany[,] would be excess coverage."

On March 4, 1998, an internal memorandum revealed that West American considered J.R. Construction an additional named insured under its policy, but determined its policy was excess over a policy issued to All Estimating by Agora, which also named J.R. Construction as an additional insured. The memorandum stated that West American was "holding the file open," to see if Altra was named in the underlying suit. In another internal memorandum dated May 1997, West American indicated an awareness that it "may be third partied into" the underlying litigation, and diaried the file ahead "to see if Agora tries to have [it] contribute to the claim." In a third internal memorandum, dated January 21, 1998, West American indicated that it might receive a third-party complaint or that Altra may be named as a direct defendant in the underlying suit.

In a letter of April 12, 1999, West American contacted Agora and stated that it was considering a tender by J.R. Construction with regard to the underlying suit. In the same letter, West American informed Agora that, should the tender be accepted, it was "certain the defense and indemnity obligations could be apportioned fairly." On August 25, 1999, West American filed the instant declaratory judgment action seeking a declaration that it had no duty to defend J.R. Construction. On August 27, 1999, West American wrote to J.R. Construction and said that it was denying coverage on the grounds that there was no written contract between J.R. Construction and Altra requiring J.R. Construction to be named an additional insured and the underlying complaint did not seek damages from J.R. Construction for liability arising out of the work of Altra. In the same letter, and for the first time, it notified J.R. Construction that it reserved the right to bring a declaratory judgment action.

In the proceedings below, J.R. Construction moved for partial summary judgment on West American's duty to defend under the policy. West American filed a cross-motion for summary judgment seeking a declaration that it had no duty to defend. On August 28, 2000, the trial court concluded that J.R. Construction was an insured under the West American policy and that West American owed a primary duty to defend J.R. Construction in the underlying suit. Without stating any reasons, however, the court also found that J.R. Construction was not entitled to damages under section 155 of the Insurance Code (215 ILCS 5/155 (West 1998)). West American has appealed the trial court's ruling on the duty to defend and J.R. Construction has cross-appealed the finding in regard to damages under section 155 of the Insurance Code.

I. Duty to Defend

■ We first address whether West American owed J.R. Construc-

tion a duty to defend under the instant policy. In all cases involving summary judgment, we review the evidence in the record *de novo*. *In re Estate of Hoover*, 155 Ill. 2d 402, 411, 615 N.E.2d 736 (1993). "The construction of an insurance policy and a determination of the rights and obligations thereunder are questions of law for the court and appropriate subjects for disposition by summary judgment. [Citation.]" *Konami (America), Inc. v. Hartford Insurance Co. of Illinois*, 326 Ill. App. 3d 874, 877, 761 N.E.2d 1277 (2002). The trial court determined that J.R. Construction was an insured under West American's policy on the grounds that Braman issued a certificate of insurance designating J.R. Construction as an additional insured and that West American's letter dated November 14, 1997, also confirmed that J.R. Construction was an insured under the policy.

On appeal, West American argues that J.R. Construction's coverage, if any, arises because of a blanket endorsement provision contained in the insurance policy. Part of that blanket provision provides:

> "WHO IS AN INSURED (Section II) is amended to include as an insured any person or organization who you are required to name as an additional insured on this policy under a written contract or agreement."

West American contends that, because a written contract was required to confer status upon J.R. Construction as an additional insured under the blanket provision, and because no written contract was executed in this case, J.R. Construction was not an insured and therefore was not entitled to a defense in the underlying suit. J.R. Construction responds that coverage arises not because of the endorsement, but because of the certificate of insurance, the oral agreement between J.R. Construction and Altra, and other writings executed by the insurer, all of which indicate that J.R. Construction was an additional insured under the instant policy. We agree with J.R. Construction that the blanket endorsement is not what determines coverage under the instant policy, but, rather, coverage is determined by a number of undisputed facts and a series of documents which we will review.

■ Before that review, we point out that, in *Zannini v. Reliance Insurance Co. of Illinois, Inc.*, 147 Ill. 2d 437, 454, 590 N.E.2d 457 (1992), the supreme court held: "A contract of insurance is established ' "if one of the parties to such a contract proposes to be insured and the other party agrees to insure, and the subject, the amount, and the rate of insurance are ascertained or understood and the premium paid if demanded." ' [Citation.]" The court also found that such a contract may be oral. *Zannini*, 147 Ill. 2d at 455. Finally, the court recognized that: "The words of a representative who speaks to a potential insured

are ' "those of the insurer," ' and the insurer is bound by [those] words. [Citation.]" *Zannini*, 147 Ill. 2d at 456.

■ Here, we find that J.R. Construction was a named additional insured under the policy based upon the following facts. First, the certificate of insurance issued to J.R. Construction by Braman (West American's agent) specifically identified J.R. Construction as an "ADDN. INS" on the Altra policy. We interpret "ADDN. INS." to mean an additional insured. Second, in his affidavit, Ramacci stated that Altra orally agreed to add J.R. Construction as an additional insured on the West American policy, and J.R. Construction was added to that policy by way of the certificate the day the contract between Altra and J.R. Construction was executed. Third, the fact that Altra orally agreed to add J.R. Construction as an additional insured was never refuted by Bruce Stevens, president of Altra, in his affidavit. Fourth, Ramacci stated in his affidavit that J.R. Construction relied upon the certificate as proof that it was named an additional insured under the West American policy. Next, in a letter to J.R. Construction dated November 14, 1997, West American confirmed that "J.R. Construction company [was] listed as an additional insured under Altra Steel's policy." Finally, several memoranda prepared by West American, outlined above, also indicate that West American considered J.R. Construction an insured. Based upon the foregoing, we conclude that J.R. Construction was an additional insured under the policy.

West American claims that Illinois law has not squarely addressed the issue of whether a written contract is required under these circumstances. Thus, it relies upon two cases from foreign jurisdictions. The authority cited by West American is distinguishable. In *Franklin v. General Electric Co.*, No. CIV. A. 95-1079 (Mass. Super. Ct. July 2, 1997), a subcontractor never received a contract from the general contractor that contained an indemnification clause requiring the subcontractor to indemnify the general contractor for the damages or injuries caused by the subcontractor. The general contractor and its insurer submitted as evidence an unsigned form agreement between the contractor and general contractor that contained the indemnity provision. In a sworn statement, the subcontractor claimed that it had no express knowledge, oral or written, of the indemnity provisions contained in the form agreement. The court found that the general contractor and its insurer failed to offer any proof, oral or written, that an express contract to indemnify was executed by the parties. *Franklin*, slip op. at 4.

*Franklin* is distinguishable on its facts. Here, the evidence showed an intent by the parties that J.R. Construction was to be added as an additional insured under the West American policy. Ramacci testified

that Altra orally agreed to add J.R. Construction as an additional insured. Further, the certificate of insurance and the letter dated November 14, 1997, confirmed that West American acknowledged J.R. Construction as an additional insured under the policy. The exact language of the letter states: "This is to confirm that J.R. Construction Company is listed as an additional insured under Altra Steel's policy." In *Franklin*, there was no evidence of an agreement between the general contractor and subcontractor. Here, the evidence indicates the opposite. Moreover, we are not bound by the foreign, unreported decision in *Franklin*, which is of no precedential value.

Next, West American relies upon *Metric Constructors, Inc. v. Industrial Risk Insurers*, 102 N.C. App. 59, 401 S.E.2d 126 (1991). In *Metric*, the plaintiff alleged that the failure to list it as an additional insured under the policy at issue was an oversight. The plaintiff provided extrinsic evidence to establish coverage and did not rely on the language of the policy that defined who was an insured. The plaintiff was not listed as an insured under the policy. On that basis, the Court of Appeals of North Carolina concluded that the plaintiff had not demonstrated that it was an insured under the required policy language. *Metric*, 102 N.C. App. at 62-63, 401 S.E.2d at 128.

*Metric* is distinguishable because the evidence in this case indicates an acknowledgment by West American that J.R. Construction was an additional insured under its policy. Further, *Metric* is not controlling in this jurisdiction.

West American also relies on *United States Fire Insurance Co. v. Hartford Insurance Co.*, 312 Ill. App. 3d 153, 156, 726 N.E.2d 126 (2000), for the proposition that oral contracts are insufficient in Illinois when the insurance policy calls for a written contract. We agree with the holding in *United States Fire*, which established that when an insuring agreement requires a contract in writing to provide coverage to an additional insured, an oral contract is insufficient. *United States Fire*, 312 Ill. App. 3d at 156. However, *United States Fire* is also distinguishable on its facts.

In *United States Fire*, the general contractor alleged that the subcontractor orally agreed to name it as an additional insured on the subcontractor's policy. However, the subcontractor denied that insurance coverage was a part of the oral agreement. Moreover, the general contractor was not provided with a certificate of insurance at the time one of the subcontractor's employees was injured on the jobsite. Two days after the accident, the general contractor requested and received a certificate of insurance naming it as an additional insured on the subcontractor's insurance policy.

In the instant case, both parties agreed that it was standard

industry practice for the general contractor, J.R. Construction, to be listed as an additional insured under the subcontractor's policy. Here, written documents existed that evidenced Altra's intention to include J.R. Construction as an additional insured which, among other things, included the certificate of insurance and the letter of November 14, 1997. As a result, this case is unlike *United States Fire*, where the only evidence of an agreement between the parties was a certificate of insurance issued *after* the injury alleged in the underlying suit. The *United States Fire* court did not rely on the certificate of insurance to reach its decision, because it was issued *after* the date of the injury. Instead, it reviewed only the policy and a blanket provision in that policy, which is similar to the one here. Under the blanket provision, the court held that an oral agreement would not suffice, and because no written agreement between the parties was in place at the time of the injury, there was no coverage. We thus find *United States Fire* distinguishable on its facts.

Finally, we address *Pekin Insurance Co. v. American Country Insurance Co.*, 213 Ill. App. 3d 543, 572 N.E.2d 1112 (1991). In *Pekin*, the subcontract required a roofing subcontractor to provide the general contractor with a certificate of insurance naming the general contractor as an additional insured. The general contractor was named an additional insured on the subcontractor's policy. A disclaimer in the certificate contained the following language:

"THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW." *Pekin*, 213 Ill. App. 3d at 546-47.

A second statement in the certificate provided:

"THIS IS TO CERTIFY THAT POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL OF THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICES." *Pekin*, 213 Ill. App. 3d at 547.

The insurance policy itself contained the following exclusion: " 'This insurance does not apply to "bodily injury" *** arising out of' " " 'roofing-construction residential or commercial.' " *Pekin*, 213 Ill. App. 3d at 545.

The employee of a roofing subcontractor was injured on the jobsite

and filed a suit against the general contractor regarding his injuries. The general contractor tendered the defense to the subcontractor's insurer. The insurer denied coverage on the basis that the policy represented by the certificate contained a policy exclusion that barred coverage.

The plaintiff filed a declaratory judgment action seeking coverage based on the fact that the certificate of insurance identified the general contractor as an additional insured under the policy. The plaintiff further argued that, because the terms of the policy conflicted with the plain meaning of the certificate and plaintiff was never provided a copy of the policy exclusion, the coverage afforded by the certificate should prevail. The trial court granted a motion for judgment on the pleadings filed by the subcontractor's insurer. On review, the appellate court found that the certificate only served to inform the general contractor that it had the same insurance coverage as the primary insured for the project, subject to the terms and exclusions within that policy. Therefore, the court concluded that there was no conflict between the certificate and the insurance policy. *Pekin*, 213 Ill. App. 3d at 548.

The first disclaimer in *Pekin*, set forth above, is identical to the one in the instant case. West American relies upon *Pekin* for the proposition that when a certificate of insurance contains such a disclaimer, it generally confers no rights on the holder. West American further argues that J.R. Construction was not conferred any right to coverage as an additional insured absent a written agreement required by the policy itself. We find that *Pekin* is distinguishable from the instant case. In *Pekin*, the issue was whether the policy and the certificate of insurance conflicted in terms of the coverage promised to the additional insured, not whether the additional insured was an insured under the policy. While the *Pekin* court held that the certificate only provided the additional insured with information, the additional insured was still entitled to the same coverage as the primary insured under the policy. Thus, while *Pekin* involved the consistency in coverage between the certificate and the policy, this case concerns whether the certificate provided coverage to J.R. Construction as an additional insured under the policy. Thus, *Pekin* and the instant case are distinguishable.

We acknowledge West American's argument that the certificate of insurance states that it is for information only and does not confer rights on the holder or amend coverage set forth in the policy. However, in the event the certificate alone did not confer status upon J.R. Construction as an insured under the policy, the certificate and the policy together granted J.R. Construction coverage. Moreover, all of

the documents prepared by West American, including the letter from West American on November 14, 1997, confirm that J.R. Construction was an additional insured. Thus, based upon the certificate and the policy specifically described therein, together with the confirmation made in the November 14, 1997, letter, and West American's own internal documents, we conclude, as a matter of law, that J.R. Construction was a named additional insured under the instant policy.

Therefore, because J.R. Construction was an insured under the policy, we find, as the trial court did, that the blanket additional insured endorsement and its exclusions do not apply. As a result, no written agreement needed to be executed by the parties under these facts.

■ Relying on the same blanket provision, West American also claims that, even if J.R. Construction were an additional insured, it would not be covered in the underlying suit because the action did not arise out of Altra's work. Because we have already concluded the blanket endorsement is not what provides J.R. Construction coverage, we reject West American's argument on this ground. Thus, we conclude that J.R. Construction has the same coverage as the primary policyholder, in this case, Altra.

■ Once it has been determined that an insured is covered by a policy, an insurer's duty to defend is triggered

> "when a filed complaint alleges facts which are within, or potentially within, the coverage of the policy, without regard to whether the allegations are groundless, false, or even fraudulent. [Citation.] Even if only one of the theories of recovery stated in the complaint comes within the scope of coverage under the policy, the insurer has a duty to defend. [Citations.]" *Waitzman v. Classic Syndicate, Inc.*, 271 Ill. App. 3d 246, 253, 648 N.E.2d 104 (1995).

■ "Pursuant to these principles, two requirements must be satisfied before an insurer's duty to defend arises: (1) the action must be brought against an insured, and (2) the allegations of the complaint must disclose the potential of policy coverage. [Citation.]" *Federal Insurance Co. v. Economy Fire & Casualty Co.*, 189 Ill. App. 3d 732, 735, 545 N.E.2d 541 (1989). As we noted above, the underlying complaint alleged that J.R. Construction and "its agents, servants, and employees" were negligent in that they, among other things:

> "(a) Failed to make a reasonable inspection of the premises and the work being done thereon, when the Defendant knew, or in the exercise of ordinary care should have known, that said inspection was necessary to prevent injury to the Plaintiff;
>
> (b) Improperly operated, managed, maintained and controlled the aforesaid premises, so that as a direct and proximate result thereof, the plaintiff was injured ***."

Having examined these allegations, the instant policy, and the entire Masunas complaint, we conclude there was a duty to defend because (1) the action was brought against a named additional insured, J.R. Construction, and (2) the allegations of the complaint disclose the potential for policy coverage. *Federal*, 189 Ill. App. 3d at 735.

II. Estoppel

Even if the exclusions under the blanket endorsement applied, we would still conclude, under these facts, that West American is estopped from raising these policy defenses to coverage as a matter of law. The supreme court has stated:

> "The general rule of estoppel provides that an insurer which takes the position that a complaint potentially alleging coverage is not covered under a policy that includes a duty to defend may not simply refuse to defend the insured." *Employers Insurance of Wausau v. Ehlco Liquidating Trust*, 186 Ill. 2d 127, 150, 708 N.E.2d 1122 (1999).

Further:

> "Where an insurer is uncertain as to the extent its policy provides coverage, it has two options. The insurer must defend under a reservation of rights; otherwise, the insurer must secure a declaratory judgment as to its rights and obligations before trial or settlement of the underlying action." *Central Mutual Insurance Co. v. Kammerling*, 212 Ill. App. 3d 744, 748, 571 N.E.2d 806 (1991).

In *Ehlco*, the supreme court additionally held:

> "Once the insurer breaches its duty to defend, however, the estoppel doctrine has broad application and operates to bar the insurer from raising policy defenses to coverage, even those defenses that may have been successful had the insurer not breached its duty to defend." *Ehlco*, 186 Ill. 2d at 151-52.

We begin by reiterating that West American had a duty to defend J.R. Construction because it was a named additional insured under the policy and because the allegations on the underlying complaint were within or potentially within the policy's coverage. *Waitzman*, 271 Ill. App. 3d at 253. Further, the duty to defend was breached because West American waited 21.5 months from the time the defense was tendered until the time it filed its declaratory judgment action. "[T]he insurer must take some action to adjudicate the issue of coverage or undertake to defend the insured under a reservation of rights, and it must take that action within a reasonable time of a demand by the insured." *Korte Construction Co. v. American States Insurance*, 322 Ill. App. 3d 451, 458, 750 N.E.2d 764 (2001). In dealing with an estoppel claim in *Korte*, the insurer argued that there was a *bona fide* dispute concerning the scope and application of insurance coverage; specifi-

cally, whether the insurer was an excess provider and whether the insured's liability arose out of the acts performed by another party. Rejecting that argument, the reviewing court concluded that the insurer should have raised these disputes in a declaratory judgment action or defended under a reservation of rights, instead of simply denying its duty to defend. *Korte*, 322 Ill. App. 3d at 461.

In its letter of November 24, 1997, West American agreed that J.R. Construction was an insured, but stated that its policy was excess. It indicated that another insurance company, Agora, had assumed the defense. Then almost two years later, it filed the instant declaratory judgment action. An insurance company cannot "simply stand on the sidelines" because another insurance company performs its own contractual duties. *Kammerling*, 212 Ill. App. 3d at 749. West American's failure to take the necessary action for 21.5 months from the time the defense was tendered was unreasonable as a matter of law. As a result, West American is estopped from raising the policy defenses under the blanket additional insured endorsement and its exclusionary language. In *Kammerling*, the appellate court affirmed the trial court's summary judgment order finding estoppel where the insurance carrier waited 10 months to file a declaratory judgment action after receiving tender from its insured. *Kammerling*, 212 Ill. App. 3d at 750. We find the instant case to be more compelling than *Kammerling* because West American, after representing to J.R. Construction that it was an additional insured under the policy, denied coverage for almost 22 months. Moreover, the initial denial was based upon its claim that the policy was excess to any other policy. In the interim, J.R. Construction was forced to defend the underlying lawsuit to its detriment.

We are not persuaded by the authority relied upon by West American on this question. *Travelers Insurance Co. v. Freightliner Corp.*, 256 Ill. App. 3d 1049, 1055, 628 N.E.2d 325 (1993), is also distinguishable. The appellate court never addressed the estoppel argument in *Travelers* because it affirmed the trial court's determination that Freightliner was not an additional insured under the policies in that case.

For the reasons above, we conclude that West American is estopped as a matter of law from raising policy defenses to coverage. Because of our findings that J.R. Construction was a named additional insured under the policy and that the estoppel doctrine applies to West American, we need not consider the reformation and waiver arguments raised by J.R. Construction.

III. Section 155 Damages

■ We next address the issue on cross-appeal whether the trial

court erred in denying J.R. Construction damages under section 155 of the Insurance Code (215 ILCS 5/155 (West 1998)). As a preliminary matter, we find that this court has jurisdiction to review this question upon review of the trial court's order dated May 14, 2001. The order specifically denied "J.R. Construction's claim for Section 155 damages." The order further provides that there is no just reason to delay enforcement or appeal of the order under Supreme Court Rule 304(a) (155 Ill. 2d R. 304(a)). West American claims that while the trial court's summary judgment ruling was appealable under Supreme Court Rule 304(a), its denial of J.R. Construction's claim for sanctions under section 155 was not. In our view, the denial of the claim for sanctions under section 155 was final and appealable under the express language of Supreme Court Rule 304(a), which allows an appeal to be taken as to one or more claims if the trial court "has made an express written finding that there is no just reason for delaying either enforcement or appeal or both." 155 Ill. 2d R. 304(a). As a result, we conclude that this court has jurisdiction to review the question.

◾ Next, West American argues that an abuse of discretion standard is the applicable standard when reviewing a section 155 claim. We disagree. It is well settled the proper standard of review applied to an award under section 155 pursuant to a summary judgment is a *de novo* standard. *Ehlco*, 186 Ill. 2d at 160; *Korte*, 322 Ill. App. 3d at 460; *Mobil Oil Corp. v. Maryland Casualty Co.*, 288 Ill. App. 3d 743, 681 N.E.2d 552 (1997).

◾ Section 155 of the Insurance Code allows an award of attorney fees and other costs in cases where the insurer caused "an unreasonable delay in settling a claim, and it appears to the court that such action or delay is vexatious and unreasonable." 215 ILCS 5/155 (West 1998); *Mobil Oil Corp.*, 288 Ill. App. 3d at 751. "The determination of whether an insurer's actions are vexatious and unreasonable must be determined after examining the totality of [the] circumstances." *Mobil Oil Corp.*, 288 Ill. App. 3d at 752. The *Mobil* court further held:

> "To be considered are the insurer's attitude, whether the insured was forced to file suit to recover, and whether the insured was deprived of the use of its property. If a *bona fide* dispute existed regarding the scope of the insurance coverage, an insurer's delay in settling the claim may not violate section 155." *Mobil Oil Corp.*, 288 Ill. App. 3d at 752.

◾ In the present case, West American issued a certificate of insurance to J.R. Construction on July 31, 1997, informing J.R. Construction that it was an additional insured under Altra's policy. J.R. tendered its defense to West American on October 23, 1997. On the same date, J.R. Construction also tendered its defense to Agora.

Agora accepted the tender and defended J.R. Construction. The record indicates Agora later became insolvent. In the letter of November 14, 1997, West American confirmed J.R. Construction was listed as an additional insured under the policy. On August 27, 1999, West American denied coverage on two grounds: that there was no written contract between J.R. Construction and Altra requiring J.R. be named an additional insured on the West American policy; and that the underlying complaint did not seek damages that arose out of Altra's work.

J.R. Construction argues that West American's delay in providing coverage was unreasonable and vexatious because it waited 21.5 months before filing a coverage action despite the fact that J.R. Construction was an additional insured under the policy. In support of its argument, J.R. Construction relies upon *Ehlco*, where the supreme court held that an insurer's refusal to defend for over one year after it first received notice of the underlying suit was unreasonable and vexatious as matter of law. *Ehlco*, 186 Ill. 2d at 160. It further relies upon *Richardson v. Illinois Power Co.*, 217 Ill. App. 3d 708, 713, 577 N.E.2d 823 (1991), where the court found that the record supported the circuit court's finding that the insurer's refusal to defend was vexatious and unreasonable.

In our view, this question should be remanded to the trial court. In the order of May 14, 2001, the trial court denied J.R. Construction's claim for section 155 damages. However, it did not provide any basis for that decision. Based upon the facts already discussed and the trial court's finding that estoppel would bar the raising of any policy defenses, we cannot conclude that a denial of these damages was proper as a matter of law. We therefore vacate the trial court's ruling with respect to section 155 damages in the order of May 14, 2001, and remand this matter for further proceedings consistent with this order.

Affirmed in part; vacated in part and remanded for further proceedings.

GORDON and CAHILL, JJ., concur.